## DECLARATION OF JOSEPH BRADLEY SHERIDAN

I, Joseph Bradley Sheridan, pursuant to 28 U.S.C. § 1746 and Va. Code § 8.01-4.3, do hereby declare and verify, under the penalty of perjury, as follows:

1.  I am 51 years old and am competent to make this sworn declaration.

2.  I hold a Bachelor of Science degree in finance from West Virginia University and a Master of Science degree in Information and Telecommunications Systems from The Johns Hopkins University – Carey Business School.

3.  Over the past 26 years I have held various roles in the financial, information technology and data engineering industries. Over the course of my career, I have held positions such as programmer, analyst, director, vice president, and managing director.

4.  In February 2020, I became employed by Infinitive, Inc. ("Infinitive") and in October 2021 I was promoted from Principal to the role of Director, Data Analytics.

5.  In March 2023 I left my employment with Infinitive and became employed by M Corp d/b/a 11:59 ("11:59") as its Vice-President – Data Analytics.

6.  At 11:59 my primary job duty was to lead the delivery of the company's Databricks consultancy services to clients.

7.  Although I was primarily hired to deliver services, I was also involved in receiving leads for prospective work. Potential projects generally came to me in one of two ways— (i) I was contacted by the prospective client who was interested in working with me; or (ii) a Databricks Account Executive contacted me because Databricks was working directly with a prospective client, and believed me and my team could be helpful in servicing that prospective client.

8.  For years, I have utilized a Google Drive account for both personal and professional reasons. I have maintained personal documents, such a tax and medical records on that account, as well as saving work documents that I believed I might need access to away from my work computer. On March 11, 2023, I created a folder titled, "11:59", on my Google Drive account (the "11:59 Folder") and then saved my 11:59 signed offer letter within the 11:59 Folder.

9.  After creating the 11:59 Folder and continuing throughout my employment with 11:59, I would continue to save documents related to 11:59's business, including documents relating to my 11:59 responsibilities and business activities, to the 11:59 Folder. I did so in order to have these documents readily available to me given the demands of my job, such as for when I would not have my 11:59 issued computer with me and would thus need to access 11:59 and other documents relating to my job duties from a device other than my 11:59 issued computer, such as my mobile phone.

10.  At some point between June 9 and 12, 2024, I ran into Phil Kyle, the President and COO of Infinitive, during a Databricks conference. On July 11, 2024 I received a message from Denis McFarlane, Infinitive's Founder and CEO, telling me that Mr. Kyle had mentioned to him that we spoke at the Databricks conference and Mr. McFarlane invited me to meet with him.

11.  On August 13, 2024, Mr. McFarlane and I met for coffee. In the course of the conversation, I expressed to Mr. McFarlane my dissatisfaction with the working conditions at 11:59 and that I was preparing to look for a new job. Mr. McFarlane responded by expressing an interest in having me return to employment at Infinitive.

12.     Some days after I met with Mr. McFarlane, I interviewed with Jeff Theobald, Infinitive's Managing Director, Data Platforms.

13.     Subsequent to this interview with Mr. Theobald and prior to August 21, 2024, I met with David Gonet, Infinitive's Director of Talent Acquisition to gather more information concerning Infinitive's benefits and compensation packages as I continued to consider becoming employed by Infinitive again.

14.     On August 21, 2024, I accepted an offer of employment with Infinitive with a start date effective September 16, 2024. (**Exhibit A, Offer of Employment**.)

15.     On August 20, 21, and 22, 2024 I saved additional documents from the 11:59 Computer to the 11:59 Folder on my Google Drive account, including documents relating to 11:59's business. I retained these documents after my employment with 11:59 ended. I now recognize that the copying and retention of these documents was improper.

16.     On August 22, 2024, I notified 11:59 in writing that I was resigning from my position as Vice President, Data Analytics, effective September 6, 2024.

17.     During my two weeks' notice period with 11:59, I was asked by someone at 11:59 to bring 11:59's Growth Team up to speed regarding opportunities and ongoing projects with which I was involved. During this period, I spent time with employees on 11:59's Growth Team to review and transition various opportunities and projects with them prior to my leaving 11:59. This process included meetings attended by Tim Collinson, 11:59's Chief Technology Officer.

18.     My last day as an 11:59 employee was September 6, 2024.

19.     Since my last date of employment with 11:59, I have retained the documents that I uploaded to the 11:59 Folder, including documents relating to my former employment with 11:59.

20.     After my employment with 11:59 ended, I began working for Infinitive in the role of Managing Director, Data Platforms Public Sector. I began providing work for Infinitive on September 9, 2024, which was the same day I received access to the Brad.Sheridan@infinitive.com email account. I did not have access to that account prior to that date.

21.     On September 12, 2024, 11:59 sent me a "Cease and Desist" letter, which among other things, instructed me to "preserve any and all evidence."

22.     Prior to my employment at 11:59, while I was working for Infinitive the first time, I created a Google Document on my Google Drive that contained a list of professional contacts and email addresses (the "Google Contact List"). When I changed my employment to 11:59, I continued to use, access, and update this document. The Google Contact List was a document maintained entirely by me and was never stored on the 11:59 computer network. I was never directed by anyone at 11:59 to maintain this document. All of the information on the Google Contact List is lawfully available from a source other than 11:59. I have not shared the Google Contact List with any individual or entity other than my counsel in the course of this litigation.

23.     Following the submission of my resignation to 11:59, I created a Google Document on my Google Drive account that listed items I wanted to remember to do once I began my job at Infinitive (the "Google To Do List"). The Google To Do List was a document maintained entirely by me and was never stored on the 11:59 computer network. I was never directed by anyone at 11:59 to maintain this document. All of the information on the Google To Do List is lawfully available from a source other than 11:59. Since my resignation from 11:59, I have opened and viewed the Google To Do List. I have not shared that document with any individual or entity other than my counsel.

24.     Since my employment with 11:59 ended, I have accessed my personal documents on my Google Drive account, as well as the Google To Do List and the Google Contact List. Since my employment with 11:59 ended, I have not accessed, used, or copied any of the 11:59 documents that were saved on my Google Drive. Other than the Google To Do List and the documents I retained copies of in the 11:59 Folder, I am not aware of having any other files (electronic or otherwise) that 11:59 could reasonably consider confidential.

25.     I have never received direction from Infinitive to download or to otherwise take documents belonging to 11:59.

26.     Prior to receiving the September 12, 2024 Cease and Desist letter from 11:59's counsel, I have never communicated to Infinitive that I have downloaded or taken documents relating to 11:59's business. To my knowledge, Infinitive had not learned that I had downloaded the foregoing documents until it received a letter from 11:59's counsel on September 12, 2024.

27.     Through counsel I have repeatedly informed 11:59, that I would like to delete and destroy the 11:59 Folder and all documents located therein, including the Google Contact List and Google To Do List. However, I do not believe I am permitted to do so in light of my preservation duties without 11:59's express authorization.

28.     So far, 11:59 has declined to provide me with authorization to delete the Google Drive Files and instead reemphasized my duty to preserve these documents on my Google Drive.

29.     I will not access, copy, modify, delete, or disclose the Google Drive Files except as directed by 11:59 or the Court.

30.     After giving notice of my resignation to 11:59, I reached out to a number of my contacts both at Databricks and to some prospective clients to alert them that I would be leaving 11:59 and moving to Infinitive. The principal reason for my contact was my concern that many of the Databricks representatives and prospective clients felt like they were hiring me rather than 11:59. Consequently, I believed it would be improper to resign without alerting them. Infinitive did not instruct or encourage me to engage in these communications.

31.     I understand that 11:59 has alleged that my communications caused 11:59 to lose three projects, which it has identified as "Project A," "Project B," and "Project C." I believe I know what projects each of those pseudonyms refers to.

32.     Project A was a potential opportunity to perform work for a state government agency. Databricks Account Executive Cheryl Miles suggested this project to me while I was working for 11:59. When she found out I was leaving 11:59, she indicated she wished to move the work away from 11:59. I am currently unaware of the status of this project.

33.     Project B was a potential opportunity to do work for a nonprofit membership association. This opportunity came to me while I was working for 11:59 directly from the prospective client, through an individual I met during my first tenure with Infinitive. Since re-joining Infinitive, I have learned that the same individual had also contacted Infinitive to discuss the same project before I ever discussed rejoining the company.

34.     I understand that 11:59 has alleged that I was coordinating with Infinitive as of August 1, 2024 based on an erroneous email sent from the prospective client on Project B to brad.sheridan@infinitive.com on that date. This is not accurate. As noted, I did not discuss reemployment with Infinitive until August 13, 2024 and my Infinitive email address was not turned on until September 9, 2024. From looking at the email, it appears that the prospective client was trying to email me at my 11:59

email address and accidentally put in my old Infinitive email address by mistake. I suspect he received an error message because he forwarded the email to my 11:59 email address two minutes later.

35. Project C was a potential opportunity to work for another state government agency. The opportunity involved performing a demonstration of the Databricks platform's capabilities to leadership within the state government agency. Databricks Account Executive Will McKinney suggested this project to me while I was working for 11:59. Prior to my last day with 11:59, my 11:59 team and I had been waiting for access to the state government agency's network so that we would be able to access the state agency's Databricks environment. After a period of time, my 11:59 team and I were given access to the state agency's network. While we received access to the state agency's network, we did not receive the ability to access email through the agency's network, which is required to access the agency's Databricks environment. In consulting with Mr. McKinney and the state agency's representative, I learned that the help desk was very slow to complete requests and I suggested that we try a personal email address to see if my 11:59 team and I would have an alternative way to access the agency's Databricks platform. I do not have a record of receiving the automated email and I have never logged into the state agency's Databricks environment. After I informed Mr. McKinney that I would be leaving 11:59, he conveyed to me that he did not plan on using 11:59 on projects going forward.

36. Since joining Infinitive, I have attended a demonstration related to Project C, but I did not lead the demonstration. I understand that 11:59 has alleged that I must have used the 11:59 "demo code" in order to be part of the demonstration. That is not accurate. Rather, I used Infinitive's Databricks environment to demonstrate to the state government agency some of the capabilities of the Databricks platform.

Pursuant to 28 U.S.C. § 1746, and Va. Code § 8.01-4.3 I declare under penalty of perjury that the foregoing information is true and correct.

Joseph Bradley Sheridan

10/28/24
Date

# EXHIBIT A



August 21, 2024

Brad Sheridan

Re: Offer of Employment

Dear Brad:

Infinitive, Inc. ("Infinitive") is pleased to offer you the opportunity to kick ass in the role of **Public Sector Data Platforms Lead**. This position carries a title of **Managing Director** and reports to Infinitive's Data Platforms Lead, Jeff Theobald. Your primary job duties and responsibilities shall include driving data solutions sales and revenue, with a primary focus on the public sector, expanding our Databricks partnership, and enabling internal development related to Databricks. Your anticipated starting date will be **September 16, 2024,** unless otherwise mutually agreed upon. This offer and your employment relationship will be subject to the terms and conditions of this letter.

If you decide to join us, your initial salary will be **$273,000** per year, or $11,375.00 per pay period, less applicable withholdings, paid in accordance with Infinitive's normal payroll practices. Your target bonus is **$100,000**. This bonus will be governed by the Infinitive *2025 Managing Director Bonus Plan*. You will receive a portion of your target bonus, **$25,000,** to be paid **February 7, 2025.** You must be employed by Infinitive and in good standing as of this date to be eligible to receive said payment.

You will be eligible for Infinitive's *2025 Managing Director Bonus Plan*. This Plan will define goals and targets with potential for exceeding the total compensation defined above. Future adjustments in compensation, if any, will be made by Infinitive in its sole and absolute discretion. This position is an exempt position, which means you are paid for the job and not by the hour. Accordingly, you will not receive overtime pay if you work more than 40 hours in a workweek.

You will also be eligible for all fringe benefits available to other "full-time" Infinitive employees, including medical and dental insurance, in accordance with Infinitive's benefit plans. Infinitive reserves the right to change or eliminate these benefits on a prospective basis at any time, and nothing herein shall affect the Company's ability to modify, alter, terminate or otherwise change any benefits or benefit plan it has in effect at any given time. You will also be eligible to participate in any incentive compensation plan that may be established by Infinitive during your employment.

If you accept our offer, your employment with Infinitive will be "at-will." This means your employment is not for any specific period of time and can be terminated by you at any time for any reason. Likewise, Infinitive may terminate the employment relationship at any time, with or without cause or advance notice. In addition, Infinitive reserves the right to modify your position or duties to meet business needs and to use discretion in deciding on appropriate discipline. Any change to the at-will employment relationship must be by a specific, written agreement signed by you and Infinitive's CEO.

**This offer is contingent upon the following**:

- Signing Infinitive's Employee Innovations and Proprietary Rights Assignment Agreement (See enclosed);

- Compliance with federal I-9 requirements (please bring suitable documentation with you on your first day of work verifying your identity and legal authorization to work in the United States); and

- Successful completion of reference, background and criminal investigations.

In the event of any dispute or claim relating to or arising out of our employment relationship or the termination of that relationship (including, but not limited to, any claims of wrongful termination or age, sex, race, disability or other discrimination), you and Infinitive agree that all legal actions arising out of or relating to any such disputes or claims shall be instituted in, and both you and Infinitive consent to jurisdiction within, the Commonwealth of Virginia, without giving effect to the principles of conflicts of law thereof. You and Infinitive further agree that any legal proceeding, commenced by one against the other, shall be brought in any state or Federal court having proper jurisdiction, within the Commonwealth of Virginia.  As a condition of employment, both you and the Company submit to such jurisdiction, and waive any objection to venue and/or claim of inconvenient forum.  Furthermore, both you and the Company knowingly and voluntarily waive any and all right to a trial by jury in any action or proceeding arising out of, under or in connection with your employment, or any disputes or claims arising out of this letter or your employment with Infinitive.

**Brad Sheridan**
**August 21, 2024**                                                                                           **Page 2**

This Company does not hire people for the purpose of acquiring their former employer's trade secrets, confidential information, or proprietary information. By signing and returning a copy of this letter, you acknowledge that you have or will return all property, including documents, memoranda, software, or other record containing information belonging to your current or former employer before starting your employment with Infinitive. You further agree that you will not bring such materials to our premises or otherwise use any such material in performing work for the Company. You also represent and warrant that you are free to enter into and fully perform under the terms of this offer letter and the agreements referred to herein without breaching any other agreement to which you are or may be bound. You further agree to indemnify the Company to the extent it is made a party to any lawsuit based upon your violation of any such agreement.

This letter, including the enclosed *Employee Innovations and Proprietary Rights Assignment Agreement*, constitutes the entire agreement between you and Infinitive relating to this subject matter and supersedes all prior or contemporaneous agreements, understandings, negotiations or representations, whether oral or written, express or implied, on this subject. This letter may not be modified or amended except by a specific, written agreement signed by you and Infinitive's CEO.

This offer will remain open until **Thursday, August 22, 2024.** To indicate your acceptance of Infinitive's offer on the terms and conditions set forth in this letter, please sign and date this letter in the space provided below and return it no later than August 22, 2024.

I hope your employment with Infinitive will prove mutually rewarding, and I look forward to having you join us. If you have any questions, please feel free to call me at 703-554-5555.

Sincerely,

Denis J. McFarlane, CEO

I have read this offer letter in its entirety and agree to the terms and conditions of employment. I understand and agree that my employment with Infinitive is at-will.

_____                          08 / 21 / 2024
**Brad Sheridan**                                                   **Date Signed**

Doc ID: de188bbf7c7334ed8722fa94e800141a4b998703



**Dropbox** Sign                                                    Audit trail

| | |
|---|---|
| **Title** | Updated Offer Letter |
| **File name** | document-eXz3pT |
| **Document ID** | de188bbf7c7334ed8722fa94e800141a4b998703 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.jazz.co**

## Document History

| | | |
|---|---|---|
| ⟲ SENT | **08 / 21 / 2024** 17:12:16 UTC | Sent for signature to Brad Sheridan (sheridan06@gmail.com) from david.gonet@infinitive.com IP: 108.44.234.135 |
| 👁 VIEWED | **08 / 21 / 2024** 17:17:01 UTC | Viewed by Brad Sheridan (sheridan06@gmail.com) IP: 70.106.180.105 |
| ✍ SIGNED | **08 / 21 / 2024** 17:19:22 UTC | Signed by Brad Sheridan (sheridan06@gmail.com) IP: 70.106.180.105 |
| ✓ COMPLETED | **08 / 21 / 2024** 17:19:22 UTC | The document has been completed. |