## SECOND DECLARATION OF DENIS MCFARLANE

I, Denis McFarlane, pursuant to 28 U.S.C. § 1746 and Va. Code § 8.01-4.3, do hereby declare and verify, under the penalty of perjury, as follows:

1.      I am over the age of 18 years old and am competent to make this sworn declaration.

2.      I am the Chief Executive Officer of Infinitive, Inc. ("Infinitive")

3.      Infinitive is a consultancy that assists clients in effectively using their digital data.  Among the services Infinitive provides are: cloud migration, advanced analytics, IT governance, and data monetization.  As part of its business, Infinitive consults for clients who are either looking to migrate to a cloud platform or looking for help in using data that already resides on a cloud platform.

4.      One such data platform that Infinitive works with is Databricks. Infinitive has had an active Databricks partnership since August 2021.  The Databricks work that Infinitive performs comes both from clients who reach out directly to Infinitive for support and from Databricks employees who may recommend a client of theirs to work with Infinitive.

5.      In September 2024, Infinitive hired Joseph Bradley Sheridan to join our Data Platform practice which includes a focus on Databricks, Amazon Web Services, and other data cloud platforms.

6.      Infinitive has a long-standing relationship with the client who I believe 11:59 refers to as "Project B" in its Complaint.  Infinitive has done work with that client since May 2022.  Brad Sheridan did work on that client for Infinitive.   In addition, I have a professional relationship with that client's Chief Financial Officer.  In Spring 2024, the buyer at that client reached out to Infinitive to discuss a potential Databricks project, which I now believe is the same "Project B" that the client discussed with 11:59.  The buyer at the Project B client was a former colleague with the Lead of Infinitive's Data Platform practice, Jeff Theobald.  My understanding is that the client asked both Infinitive and 11:59 to bid on Project B while it was considering how to proceed.  However, Infinitive was not aware that that client was talking to 11:59 during that time.

7.      Mr. Sheridan originally worked for Infinitive from February 2020 until March 2023. During that time Mr. Sheridan's email address was Brad.Sheridan@infinitive.com.  When Mr. Sheridan resigned in March 2023, access to that email account was turned off.   In anticipation of Mr. Sheridan joining Infinitive on September 16, 2024, access to his old email address was turned back on September 9, 2024, after he had left 11:59 on September 6, 2024.

8.      I understand that 11:59 has alleged that Mr. Sheridan received an email sent from the client on Project B at brad.sheridan@infinitive.com on August 1, 2024.  This is not accurate.  Because Mr. Sheridan was not employed by Infinitive at that time, he did not have access to any Infinitive email, nor network services with Infinitive.  Nor did anyone at Infinitive access that email account between March 2023 and September 9, 2024.

9.      My first meeting with Mr. Sheridan since his departure from Infinitive in March 2023 was on August 13, 2024.  Prior to that, there we no discussions with Mr. Sheridan about re-joining Infinitive.

Pursuant to 28 U.S.C. § 1746, and Va. Code § 8.01-4.3 I declare under penalty of perjury that the foregoing information is true and correct.

_____          10/28/24
Denis McFarlane                                            Date