# EXHIBIT I

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

September 12, 2024

**VIA UPS AND EMAIL**

Joseph Bradley Sheridan
20951 Highland Creek Drive
Leesburg, VA 20175
sheridan06@gmail.com

*Re: Request to Immediately Cease and Desist*

Dear Mr. Sheridan:

We have been retained by M Corp d/b/a 11:59 ("11:59" or the "Company") in connection with issues arising out of your employment. It has come to the Company's attention that you have engaged in improper conduct in violation of your contractual and legal obligations, as will be discussed in more detail below. The Company demands that you immediately cease and desist from any further violations of your obligations to the Company.

**Your Obligations to 11:59**

As you know, during your employment with the Company as Vice President of Data Analytics, you were subject to various policies contained in, among other things, the Confidentiality and Non-Disclosure Agreement ("NDA Agreement") (an executed copy of which is attached hereto as Exhibit A), your Offer Letter (an executed copy of which is attached hereto as Exhibit B) and the Company's Employee Handbook. Specifically, the NDA Agreement requires you to keep the Company's Confidential and Trade Secret Information "in the strictest confidence," and not to use or disclose such information for your own or any other purpose other than for the Company. Confidential Information is defined under the NDA Agreement to include but not be limited to:

- "Information concerning M Corp's business, including . . . strategic plans for the capture of new business . . . customer lists and customer information . . ."; and

- "Information submitted by M Corp's customers… for study, evaluation or use;"

Your obligations to maintain the confidentiality of the Company's Confidential Information survived the end of your employment with the Company. In the event you breach the obligations contained in the NDA Agreement, the Company is entitled to recover its reasonable attorneys' fees from you.

In addition, state and federal law, as well as the Company Handbook's Confidentiality and Nondisclosure of Trade Secrets policy ("Confidentiality Policy"), also require you to protect and keep confidential the Company's "trade secrets, proprietary information, and confidential commercially sensitive information (i.e., financial or sales records/reports, marketing or business strategies/plans, product development, customer lists, patents, trademarks, etc.)." Under the

Mr. Joseph Bradley Sheridan
September 12, 2024
Page 2

Confidentiality Policy, such information may not be used for personal benefit or disclosed or released without management authorization.

Your Offer Letter provides in relevant part:

> **Conflicting Employment**
>
> Executive is not automatically prohibited from having a second job or outside business interests. However, **while Executive is employed by M Corp, he is expected to devote his professional energies to M Corp** and shall not engage without disclosure to and written approval from M Corp. **Executive is prohibited from engaging in any other employment, occupation, consulting or other business activity that creates a conflict of interest with M Corp**. M Corp assumes no responsibility for secondary employment or an outside business interest and shall not provide workers' compensation coverage or any other benefit for injuries occurring from it.

(emphasis added).

The Outside Employment Policy and Ethics Code contained in the Company Handbook further emphasizes your obligation to "adhere to high standards of business and personal integrity" and to act, "at all times consistent with [your] duty of loyalty" to the Company. It is axiomatic that these policies reflect the common law duty of loyalty, which prohibits an employee from misusing the company's trade secrets and confidential information and from soliciting an employer's clients prior to the termination of their employment. See, e.g., Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 414, 58 Cal. Rptr. 3d 527, 538 (2007); Feddeman & Co., C.P.A., P.C. v. Langan Assocs., P.C., 260 Va. 35, 42, 530 S.E.2d 668, 672 (2000). Indeed, employees are required to exercise the utmost good faith and loyalty towards a company and cannot act adverse to the company's interest during their employment. Nor may an employee interfere with or disrupt an employer's business relationships, contractual or prospective.

### Your Conduct in Violation of Your Obligations and Required Next Steps

Your employment with the Company ended on or about September 9, 2024. The Company is aware that you have accepted employment with another company, Infinitive. Although your decision to accept employment with another company is not, in and of itself, a violation (subject to your start date of employment with Infinitive), your solicitation of the Company's clients and disparagement of the Company to its clients and partners prior to your separation *is* a violation of the duties outlined above. Even in this early stage of our investigation, we have already uncovered evidence you were attempting to divert business to Infinitive as early as August 1, 2024, more than

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Mr. Joseph Bradley Sheridan
September 12, 2024
Page 3

a month before your 11:59 employment ended. Your misconduct has already caused significant damage to the Company.

The Company considers this matter to be extremely serious. If such conduct continues, it will cause the Company clear and irreparable harm. As such, the Company hereby demands that you immediately cease and desist from any further conduct in violation of duties and obligations outlined herein. Specifically, the Company demands that you immediately cease and desist from:

- contact with 11:59's clients and any and all competitive activities and solicitation arising from the improper actions you took while an employee of 11:59;

- using, accessing, leveraging or disclosing any of the Company's Confidential or Trade Secret Information.

The Company also requests that you immediately execute and return to us a declaration under penalty of perjury identifying all persons and entities unrelated to 11:59 to whom you have disclosed any of 11:59's confidential, proprietary, or trade secret information. In addition, the Company requests that you provide the date you began your employment with Infinitive, the date you were provided with an Infinitive email address and identify the email address Infinitive provided.

Should you fail to comply, the Company is prepared to take immediate action in accordance with the law, including but not limited to filing a civil lawsuit against you and any other responsible parties, for equitable relief (including injunctive relief against you) and damages it suffers due to your conduct, including the repayment of any compensation paid to you while you engaged in disloyal conduct.

Please also be reminded of your obligation to return all Company issued equipment. You have previously been provided with instructions and a prepaid box and shipping label. Your Company laptop and any other Company issued equipment must be immediately returned.

We also take this opportunity to advise you that we will contact Infinitive separately to advise them of your breaches, and potentially seek assistance from them to ensure that you cease and desist from such conduct.

### Your Obligation to Preserve Evidence

You are on notice that the Company has potential legal claims against you and may commence litigation relating to the issues discussed above. This imposes on you the obligation to preserve any and all evidence, including all communications with any employee of Infinitive or of any Company client, in any form that may be relevant to these issues. This includes, without limitation: computers, laptops, smartphones, and other devices; USB, flash, external, and other drives; e-mails, texts, chats, correspondence, and electronically stored information; iCloud,

NUKK-FREEMAN & CERRA, PC
EMPLOYMENT ATTORNEYS

Mr. Joseph Bradley Sheridan
September 12, 2024
Page 4

GoogleDrive, Dropbox, and other cloud storage; and any other files, documents, data, storage locations (including those associated with social media or shared sites such as Teams and GoogleDocs, or any other repositories where potentially relevant information may be found. In addition, you must preserve all such materials in their current form, without modifying, deleting, destroying, or otherwise altering the content, form, or metadata of the materials.

   Please contact me no later than the close of business on Tuesday, September 17, 2024, to discuss the issues raised in this letter and to provide the requested information and assurances. The Company expressly reserves its rights in connection with this matter, and nothing contained in or omitted from this letter shall be deemed a waiver of any rights or remedies, legal or equitable, which the Company may have, all of which are expressly reserved.

             Very truly yours,

             NUKK-FREEMAN & CERRA, P.C.

             *Stacy Landau*

             Stacy Landau, Esq.

SL

# EXHIBIT A


# M Corp

## CONFIDENTIALITY & NON-DISCLOSURE AGREEMENT

In consideration of the commencement of Employee's employment with M Corp and the compensation that will be paid, Employee and M Corp agree as follows:

1. **M Corp Trade Secrets**

In the performance of Employee's job duties with M Corp, Employee will be exposed to M Corp's Confidential Information. "Confidential Information" means information or material that is commercially valuable to M Corp and not generally known or readily ascertainable in the industry. This includes, but is not limited to:

   (a) technical information concerning M Corp's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence;

   (b) information concerning M Corp's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, strategic plans for the capture of new business, technical and business approaches for improving target and existing client systems, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies;

   (c) information concerning M Corp's employees and consultants, including salaries, strengths, weaknesses and skills;

   (d) information submitted by M Corp's customers, suppliers, employees, consultants or co-venture partners with M Corp for study, evaluation or use; and

   (e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect M Corp's business.

2. **Nondisclosure of Trade Secrets**

Employee shall keep M Corp's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee will not disclose such information to anyone outside M Corp without M Corp's prior written consent. Nor will Employee make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than M Corp.

However, Employee shall have no obligation to treat as confidential any information which:

   (a) was in Employee's possession or known to Employee, without an obligation to keep it confidential, before such information was disclosed to Employee by M Corp;

   (b) is or becomes public knowledge through a source other than Employee and through no fault of Employee; or

Employee initials JBS


# M Corp

(c) is or becomes lawfully available to Employee from a source other than M Corp.

## 3. Confidential Information of Others

Employee will not disclose to M Corp, use in M Corp's business, or cause M Corp to use, any trade secret of others.

## 4. Return of Materials

When Employee's contract with M Corp ends, for whatever reason, Employee will promptly deliver to M Corp all originals and copies of all documents, records, software programs, media and other materials containing any Confidential Information. Employee will also return to M Corp all equipment, files, software programs and other personal property belonging to M Corp.

## 5. Confidentiality Obligation Survives Employment

Employee's obligation to maintain the confidentiality and security of Confidential Information remains even after Employee's employment with M Corp ends and continues for so long as such Confidential Information remains a trade secret.

## 6. General Provisions

(a) Relationships: Nothing contained in this Agreement shall be deemed to make Employee a partner or joint venturer of M Corp for any purpose.

(b) Severability: If a court finds any provision of this Agreement invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to affect the intent of M Corp and Employee.

(c) Integration: This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings. This Agreement may not be amended except in a writing signed by both M Corp and Employee.

(d) Waiver: The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

(e) Injunctive Relief: Any misappropriation of any of the Confidential Information in violation of this Agreement may cause M Corp irreparable harm, the amount of which may be difficult to ascertain, and therefore Employee agrees that M Corp shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation and for such other relief as M Corp deems appropriate. This right is to be in addition to the remedies otherwise available to M Corp.

(f) Indemnity: Employee agrees to indemnify M Corp against any and all losses, damages, claims or expenses incurred or suffered by M Corp as a result of Employee's breach of this Agreement.

(g) Attorney Fees and Expenses: In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures.

Employee initials: JBS

# M Corp

(h) <u>Governing Law</u>: This Agreement shall be governed in accordance with the laws of the State of California.

(i) <u>Jurisdiction</u>: Employee consents to the exclusive jurisdiction and venue of the federal and state courts located in California in <u>any</u> action arising out of or relating to this Agreement. Employee waives any other venue to which Employee might be entitled by domicile or otherwise.

(j) <u>Successors & Assigns</u>: This Agreement shall bind each party's heirs, successors and assigns. M Corp may assign this Agreement to any party at any time. Employee shall not assign any of his or her rights or obligations under this Agreement without M Corp's prior written consent. Any assignment or transfer in violation of this section shall be void.

7. Signatures

Employee has carefully read all of this Agreement and agrees that all of the restrictions set forth are fair and reasonably required to protect M Corp's interests. Employee has received a copy of this Agreement as signed by the parties.

**Employee:**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as set forth below:

M Corp

*[signature]*

(Signature)

Alejandro Castro, CEO

(Print Name & Title)

03/17/2023

(Date)

**Employee Name**

*Joseph B. Sheridan*

(Signature)

Joseph B. Sheridan, VP Data Analytics

(Print Name & Title)

03/17/2023

(Date)

# EXHIBIT B



M Corp
Sacramento, CA 95818
USA

Date: 3/9/2023

**M Corp – Offer of Employment – Brad Sheridan**

Brad, it is our pleasure to offer you the position of Vice President of Data Analytics with M Corp. You will be reporting to Jim McGinn Chief Technology Officer, and your start date is scheduled for 3/27/2023.

We believe that your proven professional background fits well with M Corp's current and future growth plans. The following details will summarize the offer and terms of employment to join our company.

Your starting annual salary will be $250,000 per year, which is paid on a semi-monthly basis. This position is a regular, full-time, exempt position, which means that you will not be eligible for overtime pay.

You will be eligible for a 30% annual end-of-year bonus subject to meeting annual goals to be mutually developed upon hire. Your job duties include but are not limited to, pursuing the mutually agreed upon strategic and performance targets.

You will be eligible for all full-time employee benefits offered by M Corp, including paid holidays, medical and voluntary health plans that will activate on the first day of your second month of employment with M Corp. A 401(k)-retirement plan is also available after your first ninety (90) days of employment.

This offer is contingent on the favorable outcome of a background check, which by acceptance of this offer you have authorized us to conduct, and your ability to verify your eligibility to work in the United States. All such testing will be conducted in accordance with applicable federal, state, and local laws.

Please provide us on your first day of employment, or earlier, the required documents to establish your identity and employment eligibility. A list of required documents will be provided upon acceptance in accordance with state and federal requirements.

As with all M Corp employees, your employment is at-will. This means that while we hope your employment will be mutually satisfying and rewarding, both you and M Corp are free to end your employment at any time, with or without notice and with or without cause. We ask that you provide a minimum of 2 weeks notice if you choose to terminate your employment at M Corp.

**Conflicting Employment**
Executive is not automatically prohibited from having a second job or outside business interests. However, while Executive is employed by M Corp, he is expected to devote his professional energies to M Corp and shall not engage without disclosure to and written approval from M Corp. Executive is prohibited from engaging in any other employment, occupation, consulting or other business activity that creates a conflict of interest with M Corp. M Corp assumes no responsibility for secondary employment or an outside business interest and shall not provide workers'

compensation coverage or any other benefit for injuries occurring from it.

**Non-Solicitation of Employees**
While Executive is employed by M Corp, and for a period of twelve (12) months immediately following the termination of his employment with M Corp for any reason, whether with or without cause, he shall not solicit, induce, recruit or encourage any of M Corp's employees to terminate their relationship with M Corp.

**Waiver, Amendment, Modification**
This Agreement may only be modified in a writing signed by Executive and M Corp. No oral waiver, amendment, or modification shall be effective under any circumstances whatsoever. The waiver of any term or provision of this Agreement shall not be effective unless the waiver is in writing. No waiver or consent to waiver or breach will constitute consent to or excuse of any other breach or waiver.

If you accept this position, please sign, and return on or before (insert date). Should you have any questions, please contact our Talent Acquisition Recruiter, Laura Harwood at laura.harwood@the-mcorp.com.

Thank you for your consideration. We truly look forward to having you join the M Corp Team!

Best Regards,
*Thomas Beyer*
**Thomas Beyer • President & COO**
858.585.0407
500 Capitol Mall, Ste. 2350
Sacramento, CA 95814
ThomasB@the-mcorp.com

Thomas Beyer, President & COO

_____   _____   _____   _____
M Corp Representative and Title    Signature    Date signed

_____   _____   _____   _____
Applicant Name                      Signature    Date signed

☑ I understand that by checking this box I am consenting to electronically sign this document, and that the electronic signature created has the same legal effect as a traditional pen and ink signature.

X *Joseph Bradley Sheridan*                                    03/10/23 2:48:38 AM (UTC)

**BRAD SHERIDAN**
**70.106.180.105**

September 12, 2024

**VIA UPS AND ELECTRONIC MAIL**

Infinitive
Denis McFarlane, Chief Executive Officer
Phil Kyle, Chief Operating Officer
20365 Exchange Street, #301
Ashburn, VA 20147
denis.mcfarlane@infinitive.com
philip.kyle@infinitive.com

      Re: **Joseph Bradley Sheridan | M Corp d/b/a 11:59**

Dear Mr. McFarlane and Mr. Kyle:

      Please be advised that this firm represents M Corp d/b/a 11:59 ("11:59" or the "Company") in connection with the above-referenced matter. I am writing in connection with Joseph Bradley Sheridan's ("Mr. Sheridan") improper solicitation of and tortious interference with 11:59's customers and partners. By way of this correspondence, we hereby inform Infinitive of 11:59's intention to enforce its agreements and policies, protect its confidential information, and prevent and/or be compensated for any improper solicitation of and/or interference with 11:59's customers, or theft of confidential information/trade secrets on the part of Infinitive with the assistance of Mr. Sheridan.

      This is to put you on express notice that Mr. Sheridan is subject to contractual and legal obligations that protect 11:59's confidential information and customer relationships. Mr. Sheridan's signed offer letter, a copy of which is attached hereto as Exhibit A, makes clear that he was expected to devote all of his professional energies to 11:59 and prohibited him from creating a conflict of interest during his employment. The Company's Employee Handbook further emphasizes Mr. Sheridan's obligations in this regard – that he act "at all times consistent with his duty of loyalty" to the Company. These policies reflect the common law duty of loyalty, which prohibits an employee from misusing a company's trade secrets and confidential information and from soliciting an employer's clients prior to the termination of their employment. Mr. Sheridan also entered into a Confidentiality and Non-Disclosure Agreement with 11:59 ("NDA Agreement") which requires him to keep the Company's Confidential and Trade Secret Information "in the strictest confidence," and not to use or disclose such information for his own or any other purpose other than for the Company. A violation of the NDA Agreement would require Mr. Sheridan to reimburse 11:59 for any legal fees it incurs.

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Infinitive
Denis McFarlane, Chief Executive Officer
Phil Kyle, Chief Operating Officer
Page 2

  Mr. Sheridan has violated these obligations by soliciting 11:59's clients and disparaging 11:59 to those clients and partners prior to his separation of employment from the Company. In other words, while receiving a paycheck from 11:59, Mr. Sheridan was brazenly attempting to divert business away from 11:59 to Infinitive. Our investigation into Mr. Sheridan's wrongdoing is still underway, but we already see indicia that Infinitive was aware or should have been aware of Mr. Sheridan's actions thereby aiding and abetting Mr. Sheridan's breaches. Given what we have seen so far, we anticipate that we will uncover other evidence of breaches of his obligations to 11:59, as well as violations of state/federal laws. My client has also sent a cease-and-desist letter to Mr. Sheridan.

  11:59 has serious concerns about Infinitive's relationship with Mr. Sheridan to the extent that Mr. Sheridan unlawfully breached his obligations to 11:59 for his own benefit and for the benefit of Infinitive. 11:59 therefore demands that Infinitive immediately cease and desist its relationship with Mr. Sheridan to the extent that this relationship is based on Mr. Sheridan's solicitation of 11:59's customers which he improperly solicited and attempted to divert to Infinitive during his 11:59 employment. To the extent Mr. Sheridan has disclosed, copied, accessed or used 11:59's confidential information for the benefit of Infinitive, Infinitive must take any and all steps to cease and desist from any such further conduct. 11:59 also demands that Infinitive return to 11:59 any 11:59 confidential information it has in its possession. 11:59 also requires the following information and assurances:

1. *Documents reflecting Mr. Sheridan's dates of employment, including the start date of his recent return to Infinitive;*

2. *Documents reflecting the date Mr. Sheridan was provided with an Infinitive e-mail address and identification of the email address provided to him;*

3. *A sworn attestation that Infinitive will cease and desist from wrongfully soliciting 11:59's customers; and*

4. *A copy of all communications that Infinitive has had with Mr. Sheridan about 11:59, its employees, customers, products, and/or confidential business practices.*

  As you know, Infinitive has an obligation to retain and not destroy any documents, emails, text messages, social media messages or posts, handwritten notes, voicemail messages, letters or any other communication that in any way relate to Mr. Sheridan or to his attempts to contact 11:59's customers on behalf of Infinitive, or your communications with 11:59 customers. Any confidential information belonging to 11:59 in the possession or control of Infinitive, including on any devices used by these employees on behalf of Infinitive, must be returned immediately and then destroyed. This obligation applies whether the information is stored on their phones, personal computers or devices or Infinitive systems, computers or devices.

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Infinitive
Denis McFarlane, Chief Executive Officer
Phil Kyle, Chief Operating Officer
Page 3

      Please contact me no later than the close of business on Tuesday, September 17, 2024 to discuss the issues raised in this letter and to provide the requested information and assurances. Failure to do so will leave 11:59 with no choice but to take legal action against Infinitive. 11:59 reserves all of its rights and remedies.

      Thank you.

Sincerely,

*Stacy Landau*

Stacy Landau, Esq.

# EXHIBIT A



M Corp
Sacramento, CA 95818
USA

Date: 3/9/2023

**M Corp – Offer of Employment – Brad Sheridan**

Brad, it is our pleasure to offer you the position of Vice President of Data Analytics with M Corp. You will be reporting to Jim McGinn Chief Technology Officer , and your start date is scheduled for 3/27/2023.

We believe that your proven professional background fits well with M Corp's current and future growth plans. The following details will summarize the offer and terms of employment to join our company.

Your starting annual salary will be $250,000 per year, which is paid on a semi-monthly basis. This position is a regular, full-time, exempt position, which means that you will not be eligible for overtime pay.

You will be eligible for a 30% annual end-of-year bonus subject to meeting annual goals to be mutually developed upon hire. Your job duties include but are not limited to, pursuing the mutually agreed upon strategic and performance targets.

You will be eligible for all full-time employee benefits offered by M Corp, including paid holidays, medical and voluntary health plans that will activate on the first day of your second month of employment with M Corp. A 401(k)-retirement plan is also available after your first ninety (90) days of employment.

This offer is contingent on the favorable outcome of a background check, which by acceptance of this offer you have authorized us to conduct, and your ability to verify your eligibility to work in the United States. All such testing will be conducted in accordance with applicable federal, state, and local laws.

Please provide us on your first day of employment, or earlier, the required documents to establish your identity and employment eligibility. A list of required documents will be provided upon acceptance in accordance with state and federal requirements.
As with all M Corp employees, your employment is at-will. This means that while we hope your employment will be mutually satisfying and rewarding, both you and M Corp are free to end your employment at any time, with or without notice and with or without cause. We ask that you provide a minimum of 2 weeks notice if you choose to terminate your employment at M Corp.

**Conflicting Employment**
Executive is not automatically prohibited from having a second job or outside business interests. However, while Executive is employed by M Corp, he is expected to devote his professional energies to M Corp and shall not engage without disclosure to and written approval from M Corp. Executive is prohibited from engaging in any other employment, occupation, consulting or other business activity that creates a conflict of interest with M Corp. M Corp assumes no responsibility for secondary employment or an outside business interest and shall not provide workers'

compensation coverage or any other benefit for injuries occurring from it.

**Non-Solicitation of Employees**
While Executive is employed by M Corp, and for a period of twelve (12) months immediately following the termination of his employment with M Corp for any reason, whether with or without cause, he shall not solicit, induce, recruit or encourage any of M Corp's employees to terminate their relationship with M Corp.

**Waiver, Amendment, Modification**
This Agreement may only be modified in a writing signed by Executive and M Corp. No oral waiver, amendment, or modification shall be effective under any circumstances whatsoever. The waiver of any term or provision of this Agreement shall not be effective unless the waiver is in writing. No waiver or consent to waiver or breach will constitute consent to or excuse of any other breach or waiver.
If you accept this position, please sign, and return on or before (insert date). Should you have any questions, please contact our Talent Acquisition Recruiter, Laura Harwood at laura.harwood@the-mcorp.com.
Thank you for your consideration. We truly look forward to having you join the M Corp Team!

Best Regards,
*Thomas Beyer*
**Thomas Beyer • President & COO**
858.585.0407
500 Capitol Mall, Ste. 2350
Sacramento, CA 95814
ThomasB@the-mcorp.com

Thomas Beyer, President & COO

_____  _____  _____  _____
M Corp Representative and Title              Signature            Date signed

_____  _____  _____  _____
Applicant Name                                Signature            Date signed

☑ I understand that by checking this box I am consenting to electronically sign this document, and that the electronic signature created has the same legal effect as a traditional pen and ink signature.

X *Joseph Bradley Sheridan*                                                  03/10/23 2:48:38 AM (UTC)

**BRAD SHERIDAN**
**70.106.180.105**