# EXHIBIT K

September 30 2024

**VIA ELECTRONIC MAIL**

Micah E. Ticatch, Esq.
Isler Dare P.C.
1945 Old Gallows Road, Suite 650
Tysons Corner, Virginia 22182
mticatch@islerdare.com

Re: **Joseph Bradley Sheridan & Infinitive | M Corp d/b/a 11:59**

Dear Counsel:

As you know, this firm represents M Corp d/b/a 11:59 ("11:59" or the "Company") in connection with the above-referenced matter. We are in receipt of your September 25, 2024 response to 11:59's September 12, 2024 cease and desist letters to Mr. Sheridan and Infinitive (the "Cease and Desists") and write in regards to same.

As you know, the Cease and Desists articulated Mr. Sheridan's violations of his obligations to 11:59. This includes Mr. Sheridan's improper solicitation of 11:59 customers and vendors prior to his separation, disparagement of 11:59, and apparent diversion of 11:59's customers to Infinitive. There is evidence that Infinitive was aware of or should have been aware of Mr. Sheridan's improper actions. You requested and we agreed to allow Infinitive additional time to investigate the conduct described in the Cease and Desists. Now, after you took the additional time, you are claiming we did not provide enough information for Infinitive to be able to investigate. We cannot allow this apparent gamesmanship and delay tactics to continue.

I. **Mr. Sheridan Has Been Untruthful**

Critically, Mr. Sheridan knows exactly what he did while he was still an employee of 11:59 and it is clear he has not been truthful with you. Perhaps he hopes that the evidence of his misconduct that he tried to destroy was not recovered, but 11:59 did recover it. As our investigation is ongoing, we have discovered additional, substantial evidence of Mr. Sheridan's breaches of his fiduciary duty, tortious interference and violations of his obligations not to solicit 11:59 employees.[1] By way of example only:

1) On August 21, 2024, Mr. Sheridan began a text exchange with a contact at Databricks, stating, "Going back to Infinitive, company I left for 11:59. Thomas out CEO let go last week. Ran company into ground. I'm worried about them Being insolvent, so it's time for me to leave." The contact responded, "Should we pivot away from 11:59 for

---

[1] Pursuant to Mr. Sheridan's offer letter, a copy of which has already been provided to you, he may not "solicit, induce, recruit or encourage any of M Corp.'s employees to terminate their relationship with M Corp. for a period of 12 months following his separation."

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Micah E. Ticatch, Esq.
Isler Dare P.C.
September 30, 2024
Page 2

HI??" Sheridan advised the contact that one of his clients "already pulled the plug and is coming over." The two conspired to ensure the Project A project contract with 11:59 was not signed.

2) On August 21, 2024, Mr. Sheridan texted another contact at Databricks, "I'm resigning tomorrow. Start new gig 9/16. I hope 11:59 doesn't say to just go now bc that would impact my availability to do the final demo for Project C." The two went on to discuss whether Sheridan could change his 11:59 email associated with the project access site to a personal email and concern over whether Sheridan would be able to access the 11:59 work after he moved to Infinitive.

3) About a week later, Sheridan exchanged emails on 11:59's email with another Databricks contact. Sheridan told him he was leaving 11:59 for Infinitive, "a more advanced Databricks partner and part of the invite-only DPP program" and "a lot of negative stuff going on at 11:59 and I need to get out. Where there's smoke, there's fire."

4) On August 22, 2024, Mr. Sheridan confirmed to a personal contact that his efforts to divert 11:59 customers to Infinitive were successful, writing, "3 of my accts emailed today that they aren't going to sign the contract with 1159 and are now waiting for me to start at infinitive."

5) On August 28, 2024, Mr. Sheridan messaged with two contacts making clear that he saw 90% of 11:59's $7 million pipeline as his, stating, "On a oppty call yesterday going through Salesforce. Pipeline is only 7MM and *90% of its mine that are leaving to follow me.*"

6) Mr. Sheridan spoke to countless 11:59 employees on the company Teams platform regarding his resignation, telling them 11:59 is insolvent and directing them to contact him offline to discuss further.

Keep in mind that the above actions occurred after the date you indicated Mr. Sheridan was offered employment at Infinitive and coinciding with the date he resigned from 11:59. Mr. Sheridan, however, remained employed (and paid) by 11:59 for another two weeks, until September 6, 2024.

Clearly, Mr. Sheridan's representations that he merely advised 11:59's customers that he had resigned and that 11:59 customers like the Project A were merely following him to his new employer are totally false.

In addition, Mr. Sheridan has confirmed that he has retained 11:59 proprietary and confidential information on his Google drive. He claims, through an attorney that does not represent him, that he has not accessed, used or disclosed this information to anyone at Infinitive.

Micah E. Ticatch, Esq.
Isler Dare P.C.
September 30, 2024
Page 3

11:59 has no reason to believe Mr. Sheridan's representation, not made under penalty of perjury as was requested. Furthermore, Mr. Sheridan did not confirm that he has not shared 11:59's information elsewhere nor if he has retained any hard copies of such information. Given the proof of misconduct exemplified above, 11:59's concerns that its information has been disseminated and/or used improperly has only increased. The necessary next steps will be outlined below.

### II.     Infinitive's Involvement with Sheridan's Wrongdoing

What is even more troubling is that Infinitive appears to have been aware of Sheridan's actions and to have sanctioned them. On August 26, 2024, Mr. Sheridan messaged with Denis McFarland, telling him:

> Morning Denis. I have some prospects that want to move forward and are going to wait for me to join Infinitive. I'd like to chat with someone, perhaps Jeff, but wanted to know if you'd rather me wait until the 16th or can I reach out now to setup another coffee with him?

McFarlane responded directing Sheridan to set up the meeting. Regarding their meeting, Sheridan told Theobald "[b]ring something to take notes with bc I'm trying to minimize emails right now." On August 27th, Sheridan provided Theobald with one of his Databrick's contact emails stating, "AE for Databricks in N.C. He will be reaching out to you." McFarlane seemed to think that because Sheridan was not subject to a non-compete agreement, he was free to have Sheridan continue to be paid by 11:59 while he badmouthed 11:59 to its vendors and customers and brazenly moved the business to Infinitive. This is outright aiding and abetting breach of fiduciary duty and tortious interference and certainly not something Infinitive would allow if it were one of its employees. We must reemphasize that the above are just examples and there is considerable additional evidence of wrongdoing, and our investigation is not yet complete.

### III.     Required Next Steps

Mr. Sheridan's actions have directly caused a significant amount of business loss, which is estimated to be worth multiple millions of dollars. The unquantifiable harm to 11:59's reputation, good will and future prospects is immeasurable. Thus, 11:59 will require strict compliance with the following next steps. 11:59 is prepared to commence litigation to ensure Mr. Sheridan and Infinitive are not permitted to benefit from their illegal actions, to secure the return of all of its information, and to limit the irreparable harm it will inevitably suffer. If compelled to seek judicial assistance, 11:59 will seek injunctive relief, compensatory damages, and punitive/exemplary damages, including all attorney's fees, costs and expenses it may incur in addressing the misconduct and enforcing its rights.

Micah E. Ticatch, Esq.
Isler Dare P.C.
September 30, 2024
Page 4

11:59 demands that Infinitive immediately do the following:

- Terminate Mr. Sheridan's employment with Infinitive; and

- Represent via declaration under penalty of perjury that:

    o You will cease contact with any of 11:59's customers, employees, agents, vendors, or suppliers that are the subject of any of the improper solicitation and tortious interference detailed above. We can provide a list of such entities to be treated as highly confidential under a confidentiality agreement.

    o Agree not to access, copy, modify, delete, disclose or otherwise do anything with 11:59's files or information.

- Provide all communications including but not limited to emails, text messages, and direct messages between Mr. Sheridan and Denis McFarland, Jeff Theobald, and/or any other employee or agent of Infinitive from June 1, 2024 to the present that refer or relate to Mr. Sheridan's 11:59 employment, vendors, or customers or Mr. Sheridan's Infinitive employment.

As to Mr. Sheridan, we require that he immediately execute a declaration under penalty of perjury that:

- He will cease contact with any of 11:59's customers, employees, agents, vendors, or suppliers that are the subject of any of the improper solicitation and tortious interference detailed above. We can also provide a list of such entities to be treated as highly confidential under a confidentiality agreement, but Mr. Sheridan is already aware of this list by virtue of his documented actions described above.

- Identifies all locations and devices, including physical and electronic files, e-mail accounts, cloud storage, computers, and cellular phones where any 11:59 information or files were viewed, accessed or copied.

- Agrees not to access, copy, modify, delete, disclose or otherwise do anything with 11:59's files or information, all of which must be preserved pursuant to our prior notice.

- Commits to honoring all of his post-employment obligations to 11:59.

- Mr. Sheridan must also provide us with all of his communications, including but not limited to emails, text messages, and direct messages between he and Denis

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Micah E. Ticatch, Esq.
Isler Dare P.C.
September 30, 2024
Page 5

McFarland, Jeff Theobald, any other employee of Infinitive, Will McKinney, Cheryl Miles and/or any Databricks employee from June 1, 2024 to the present that refer or relate to his 11:59 employment, vendors, or customers or his Infinitive employment.

I trust that the seriousness of the situation is apparent to your client. Failure to comply with the above required next steps is an indication that Infinitive refuses to discontinue its tortious interference with 11:59 business. Please contact me no later than **October 3, 2024** to confirm compliance with the above requirements. 11:59 reserves all of its rights and remedies.[2]

Sincerely,

*Stacy Landau*

Stacy Landau, Esq.

cc:    Joseph Bradley Sheridan (*via e-mail*)

---

[2] Briefly, to address your "concerns" regarding my practice of law, you can be assured that there is no reason for concern. 11:59 has employees across the country, including a member of its executive leadership in New Jersey. In addition, as I am sure you saw, our firm has an office located in San Diego, California who advises on the matter as necessary.