**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

November 20, 2024

**Via E-Mail**

Eric Chen
Databricks Inc.
160 Spear Street, 16th Floor
San Francisco, CA 94105
eric.chen@databricks.com

   RE: **M Corp dba 11:59 v. Infinitive, Inc., et al.**
     **United States District Court for the Eastern District of Virginia**
     **Civil Action No.: 1:24-cv-1823**

Dear Mr. Chen,

  As you know, this firm represents Plaintiff M Corp dba 11:59 in the above matter. We have been in communication with you concerning 11:59's concerns regarding the conduct of Databricks and at least two of its employees, Cheryl Miles ("Miles") and Will McKinney ("McKinney"). To date, we have heard nothing in response. **As such, we write to formally place you on notice of 11:59's request for Databricks and its employees to cease and desist any and all conduct which may constitute tortious interference, misappropriation of confidential and proprietary information, or conspiracy to commit same against 11:59.**

  As you are aware from our prior correspondence and conversations, Joseph Bradley Sheridan ("Sheridan") is a former 11:59 employee who resigned from 11:59 on or about August 22, 2024 (his last day being September 6, 2024) in favor of employment with Infinitive. Databricks is a partner to both 11:59 and Infinitive. 11:59 and Databricks became partners on or about August 15, 2022 and had since grown the pipeline of projects they were working on together to upwards of $7 million. Prior to his resignation from 11:59, despite knowing that many of the projects in the Databricks pipeline were close or at contract execution, before Sheridan even gave notice to 11:59, he began conspiring with Databricks employees to unlawfully interfere with 11:59's current and prospective clients, with the intention to misappropriate confidential and proprietary information and move business away from 11:59 and over to Infinitive. The facts relevant to Databricks, as 11:59 knows them to date, include (but are not limited to) the following:

- With respect to a project for the State of ▆▆▆▆[1] which Databricks and 11:59 had been working together on for months and Databricks knew or had reason to know

---

[1] In 11:59's Verified Complaint, it refers to the ▆▆▆▆ project as Project A, so as not to place an 11:59 client into the public domain and risk any further detriment to that relationship. It is disclosed herein as Databricks is well aware of its work with 11:59 on this client project. However, 11:59 requests that Databricks treat this information as highly confidential and not to share it with third parties or place it into the public domain without prior written approval from 11:59.

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Eric Chen
Databricks Inc.
November 20, 2024
Page 2

that 11:59 had received a verbal commitment from the client, the client suddenly put the project on hold after Sheridan's departure from 11:59. While Sheridan's derogatory and false statements about 11:59 to Miles certainly had a detrimental effect on the client's relationship with 11:59, Miles also took affirmative steps to interfere with 11:59's relationship with the State of ▮▮▮ and to move the project to Infinitive. By way of example only, Miles texted Sheridan on August 22, 2024 telling him, "Stay in touch w▮▮▮. I told him not to sign the ▮ contract." Sheridan confirmed Miles had interfered with the ▮▮▮ contract, on August 23, 2024, texting a former colleague, stating "Cheryl [Miles] isn't going to sign the ▮▮▮ sow. She waiting for me to start at INF."

- 11:59 and Databricks were working together on several projects for the State of ▮▮▮.[2] Regarding a project for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, on August 21, 2024, Sheridan text messaged McKinney, stating, "I'm resigning tomorrow. Start new gig 9/16. I hope 11:59 doesn't say to just go now bc that would impact my availability to do the final demo for ▮▮▮."

- That same day, Mr. Sheridan again texted with Mr. McKinney, informing him, "resignation done. Last day is 9/6. We need to come up with a plan for ▮▮▮"

- The following day, Sheridan confirmed by text message to a former colleague, "Will [McKinney] (the Cheryl on the east coast) told me he's going to have ▮▮▮▮▮ wait too, and that's a big oppty."

- McKinney and Sheridan then conspired to attempt to gain access to 11:59's confidential and proprietary data on 11:59's demo environment for Project C, which contained the demo coding 11:59 had developed, through Sheridan's personal email address. McKinney and Sheridan discussed it was critical that Sheridan maintain his access to 11:59's information and that he be able to access it after he left 11:59 and joined Infinitive. Specifically, on August 26, 2024, Mr. McKinney texted Sheridan, "Can you change the email associated with your ▮▮▮ ID from the backend on your side. If so then go in and change it to your personal email so its not tied to your old 11:59 email." In this regard, McKinney seemed to have no qualms about leveraging the work 11:59 had done for Infinitive and Sheridan's benefit.

- In furtherance of his plan to capitalize on 11:59's investment for this project to benefit himself and Infinitive, on August 27, 2024, Sheridan provided Infinitive's

---

[2] In 11:59's Verified Complaint, it refers to the ▮▮▮▮▮▮▮ projects as Project C. See footnote 1 with regard to the highly confidential nature of this information and Databricks' treatment of same.

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Eric Chen
Databricks Inc.
November 20, 2024
Page 3

- Managing Director Jeff Theobold ("Theobold") with McKinney's email address, stating "AE for Databricks in N.C. He will be reaching out to you" and told McKinney via text message that he sent McKinney Theobold's contact information from his gmail account.

- There was clear concern between Sheridan and McKinney that they might be unable to move the ▇▇▇▇ project from 11:59 to Infinitive if they did not move quickly. To that end, on September 5, 2024, Sheridan texted with Mr. McKinney, during which they conspired to use 11:59's confidential data to perform a demo on behalf of Infinitive shortly after Mr. Sheridan commenced his employment there. Specifically, Sheridan wrote, "I start a week from Monday on 9/16, so the demo can be scheduled the end of that week."

- McKinney then asked Sheridan for the demo 11:59 had done for ▇▇▇▇ and then proceeded to text Sheridan, "Oh I want you to steal it from 11:59 haha." Mr. Sheridan responded, "Good you feel that was [sic] cuz I too want to steal it. You know I'll be able to nail that demo…that's a slam dunk."

- Shortly thereafter, Sheridan messaged an employee at Infinitive, indicating, "I've got several account execs in Databricks that are pulling opportunities from 11:59 tomorrow after my last day[.]"

Sheridan communicated with other Databricks employees during this time period, making statements about 11:59 including that there was "a lot of negative stuff going on," and that "where there's smoke, there's fire," all with the intention of securing Databrick's cooperation in moving business away from 11:59 and towards Infinitive.

Clearly, as demonstrated by the above messages, Databricks and its employees not only cooperated with Mr. Sheridan's endeavors, but they also actively participated and conspired with him to misappropriate and, to use McKinney's words, "steal" 11:59's confidential and proprietary data and leverage that data against 11:59 in favor of a direct competitor. These actions have already resulted in irreparable harm to 11:59, as demonstrated by the TRO entered by the Eastern District of Virginia (which our office previously sent to your attention).

Moreover, as you are likely aware, Miles and McKinney are account representatives covering Databricks' public entity market on the west and east coast, respectively. From the messages obtained to date, it is evident that the downstream impact of Sheridan's conspiracy with these employees of Databricks is not limited solely to the $7 million pipeline of business he sought to immediately move to Infinitive, but rather the entire US market for public entity work managed by Miles and McKinney.

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

Eric Chen
Databricks Inc.
November 20, 2024
Page 4

      You are on notice that 11:59 has potential legal claims against you and may commence litigation relating to the issues discussed above. As you know, this imposes on Databricks the obligation to preserve any and all evidence, in any form that may be relevant to these issues. This includes, without limitation: computers, laptops, smartphones, and other devices; USB, flash, external, and other drives; e-mails, texts, chats, correspondence, and electronically stored information; iCloud, Google Drive, Dropbox, and other cloud storage; and any other files, documents, data, storage locations (including those associated with social media or shared sites such as Teams and Google Docs), or any other repositories where potentially relevant information may be found. In addition, Databricks must preserve all such materials in their current form, without modifying, deleting, destroying, or otherwise altering the content, form, or metadata of the materials.

      Given that we have received no response from Databricks, and no assurances that Databricks will take the appropriate steps to ensure its employees will refrain from further action against 11:59, you may consider this correspondence to be a formal cease and desist letter. Databricks must ensure that its employees refrain from any further interference with 11:59's current or prospective clients. Any confidential information belonging to 11:59 in the possession or control of Databricks, including on any devices used by its employees on behalf of Databricks, must be returned immediately. This obligation applies whether the information is stored on their phones, personal computers or devices or Databricks systems, computers or devices. Please confirm your receipt of this correspondence and acknowledgement that Databricks will refrain from any further interference, misappropriation, or conspiracy regarding same with respect to 11:59 and will return any 11:59 confidential information in its possession no later than **November 22, 2024**.

      Finally, as we have received no response to our prior request, we reiterate our demand for Databricks to produce a copy of its partner agreement with 11:59, no later than **November 22, 2024**.

      Should you have any questions, please feel free to contact me. 11:59 reserves all rights and remedies.

      Very truly yours,

      NUKK-FREEMAN & CERRA, P.C.

      *Stacy Landau*

      Stacy Landau, Esq.

SL:bw