JustUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| M CORP DBA 11:59, | : |
| Plaintiff, | : Civil Action: 1:24-cv-1823 |
| | : |
| v. | : |
| | : |
| INFINITIVE, INC., JOSEPH BRADLEY SHERIDAN, DATABRICKS INC., WILLIAM McKINNEY, CHERYL MILES, AND DOES 1-25, INCLUSIVE. | : |
| Defendants. | : |
| | : |
| INFINITIVE, INC., | : |
| Counterclaim Plaintiff, | : |
| v. | : |
| M CORP DBA 11:59 AND ALISON MOYE. | : |
| Counterclaim Defendants. | : |

**PLAINTIFF- COUNTER DEFENDANT, M CORP DBA 11:59'S OPPOSITION TO DEFENDANT- COUNTER PLAINTIFF, INFINITIVE, INC.'S**
<u>**MOTION TO COMPEL COMPLETE INTERROGATORY RESPONSES**</u>

**<u>INTRODUCTION</u>**

Infinitive's "Motion to Compel Complete Answers to Interrogatories" is a now-moot collection of overstatements and flagrant misrepresentations. Most egregiously, Infinitive represents that during an hour-long meet and confer on June 6, 2025, "11:59 did not agree to supplement any of its responses during that meeting, and has not supplemented its responses since that meeting concluded." Dkt. 96, p. 2. In fact, the opposite is true, and the parties painstakingly

reviewed each and every allegedly deficient discovery response, discussing 11:59's willingness to provide supplements to those responses by June 13, 2025. (*See* Certification of Stacy Landau, Esq. ("Landau Cert."), at ¶¶ 7-9). 11:59 similarly agreed to give Infinitive until June 13, 2025 to supplement its allegedly deficient interrogatory responses. (*Id.*, at ¶ 9)

Rather than await 11:59's amended responses, Infinitive decided to prematurely file a Motion to Compel at approximately 12:00 AM on June 13, 2025, and has since refused to withdraw same despite 11:59's supplemental responses served on June 13, 2025, as had been agreed. (*Id.,* at ¶¶ 11-12)

The Motion should be denied, and the Court should award 11:59 costs and fees incurred in opposing this frivolous application.

## LEGAL ARGUMENT

### I. 11:59's Responses to Interrogatories 2-6 are Complete and Responsive

Infinitive first maintains that 11:59's objections to Infinitive's contention interrogatories were improper. (Dkt. 96) Reading Infinitive's brief, however, the Court might be led to believe that 11:59 merely objected to these interrogatories and failed to respond. In reality, however, 11:59 objected to these requests, not as "categorically improper," but as premature insofar as they requested a complete narrative account of 11:59's case, which counsel for 11:59 explained during counsel's meet and confer on the objections. (*Id.,* at ¶ 8 (c))  In this regard, Infinitive's claim that 11:59 has not "argued" that contention interrogatories are premature is bizarre. 11:59 has not withheld information on the basis of the contention interrogatories, but has reasonably maintained that it must supplement its responses as responsive information is in Defendants'[1] possession. This

---

[1] "Defendants" refers to the named Defendants in the original Complaint captioned M Corp dba 11:59 v. Infinitive, Inc., Joseph Bradley Sheridan, Databricks, Inc., William McKinney, Cheryl Miles. Please note that William McKinney and Cheryl Miles have been dismissed from the case.

claim is even more tenuous given that 11:59 explicitly used the word "premature" in 3 of the 5 objections that Infinitive disputes. (Dkt. No. 96-2, at Interrogatory Nos. 2, 5, and 6).

While Infinitive is dubious that *Rainey v. Anderson* stands for the proposition that "contention interrogatories are categorically improper," (Dkt. 96 at p.2), 11:59 does not take that position. *Rainey*, does, however, stand for the proposition that "[a]lthough the Federal Rules permit contention interrogatories, they cannot be used to require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. Nor is an interrogatory the appropriate device to "pin down" a litigant to one or another line of argument, or to restrict the evidence at trial." *Rainey for Est. of Rainey v. Anderson*, No. 2:17CV444, 2018 WL 3636596, at *2 (E.D.Va. Apr. 11, 2018) (internal quotations and citations omitted). And, as Infinitive noted (in a footnote), Rule 33 provides that "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2).

At no point in time did 11:59 maintain that it would not respond to these interrogatories based on the contention interrogatory objection, and in fact included a two-page narrative response fully responding to Interrogatories 2-6 to the best of 11:59's ability at this stage in discovery. (*See* **Exhibit A** to the Landau Cert.). Notwithstanding, during the meet-and-confer on June 6, 2025, 11:59 *agreed* to further supplement its responses to Interrogatories 2-6, and on June 13, 2025, provided highly detailed amended responses to each of these requests. (*See* Landau Cert., ¶ 9). More specifically:

- **Interrogatory No. 2:** This Interrogatory asked 11:59 to detail each 11:59 trade secret Infinitive misappropriated, the steps taken by 11:59 to prevent disclosure of each trade

3

secret, and the facts that support that Infinitive misappropriated each trade secret. 11:59's initial response to this Interrogatory provided an almost two-page narrative response detailing the types of trade secrets misappropriated amongst the 1,700 11:59 files copied from an 11:59 device to Defendant Sheridan's personal Google Drive. The response also provided specifics regarding Infinitive's actual and constructive knowledge and participation relating to the misappropriation. Without any admission that its initial answer was incomplete, 11:59 nevertheless amended its response to address Infinitive's concerns, including a detailed list of documents and folders containing trade secrets taken by Defendant Sheridan, in furtherance of Defendant Sheridan's employment with Infinitive, and in his capacity as an employee of Infinitive. Infinitive knew or should have known that Defendant Sheridan was taking these actions on behalf of Infinitive. Infinitive's Motion to Compel a full response to Interrogatory No. 2 is moot. Neither 11:59's initial response, nor its supplemental response, are deficient.

- **Interrogatory 3:** 11:59 previously referred to its response to Interrogatory No. 2, which contained information responsive to Interrogatory No. 3, but amended its response to elaborate on the facts known to 11:59 at this time supporting the contention that Infinitive acted with willful and/or malicious intent.

- **Interrogatory No. 4:** 11:59 previously referred to its response to Interrogatory No. 2, which contained information responsive to Interrogatory No. 4, but amended its response to elaborate on the facts known to 11:59 at this time supporting the contention that Infinitive conspired with the other Defendants.

- **Interrogatory No. 5:** 11:59 previously referred to its response to Interrogatory No. 2, which contained information responsive to Interrogatory No. 5, but amended its response to elaborate on the facts known to 11:59 at this time supporting the contention that Infinitive acted intentionally to interfere with 11:59's customer relationships.

- **Interrogatory No. 6:** 11:59 previously referred to its response to Interrogatory No. 2, which contained information responsive to Interrogatory No. 6, but amended its response to elaborate on the facts known to 11:59 at this time supporting the contention that Infinitive directed or supported Sheridan's breach of his fiduciary obligations to 11:59.

(*See* 11:59's Amended Objections and Responses to Defendant Infinitive's First Set of Interrogatories, attached to the Landau Cert. as **Exhibit D)**.

For the reasons set forth above, 11:59 has appropriately objected to Infinitive's contention interrogatories, but simultaneously provided complete responses to each of Infinitive's Interrogatories 2-6 at this stage of discovery. *See Univ. of Virginia Pat. Found. v. Gen. Elec. Co.*, No. 3:14CV51, 2015 WL 4878880, at *2 (W.D. Va. Aug. 14, 2015) ("Contention interrogatories [] can be of limited use before substantial documentary or testimonial discovery has been completed if the parties have not yet been able to narrow the dispute or collect key facts") (internal quotation omitted).

Infinitive's refusal to withdraw the motion as to these Interrogatories is nothing short of frivolous given the level of detail in each of these responses.[2]

---

[2] With respect to Interrogatory No. 2 specifically, in response to 11:59's request to withdraw the Motion, Infinitive requested that 11:59 include a table "(i) identifying the documents that contain that trade secret; (ii) efforts undertaken to prevent disclosure of the trade secret; and (iii) all facts that support the contention that Infinitive (as opposed to Mr. Sheridan) misappropriated that trade secret." (*See* June 16, 2025 letter from Infinitive's counsel to 11:59's counsel, attached to the

## II.   11:59 Has Provided a Client List and Will Continue to Supplement Its Discovery Information

Infinitive contends that 11:59's response to **Interrogatory No. 8**, which requests detailed information regarding 11:59's lost revenue as a result of Infinitive's conduct and facts supporting Infinitive caused the loss, is deficient. (Dkt. 96 p.3). Notwithstanding that 11:59's responses (and its initial disclosures) contain detailed information regarding the expected revenue from the projects[3] and losses sustained from Infinitive's role in interfering with same (what is known to date), Infinitive nonetheless brings this frivolous motion. (*See* Landau Cert., ¶ 15). 11:59 has repeatedly made clear that it will supplement its responses to the best of its ability and as appropriate. (*Id.,* at ¶ 16). 11:59 has not and is not withholding responsive information. (*Id.,* at ¶ 17). Such information will be supplemented appropriately and timely. (*Id.*) 11:59 has engaged an expert to opine on the scope of 11:59's damages claims, which will be timely disclosed pursuant to the Court rules and applicable scheduling orders. (*See* **Exhibit D**, at Interrogatory No. 8).

Next, Infinitive contends 11:59 has not adequately responded to **Interrogatory No 10**, which seeks information regarding clients contained on the Restricted List. (Dkt. 96, p. 4). Again, Infinitive's Motion to Compel a more complete answer to this Interrogatory is premised on a misrepresentation of counsel's meet-and-confer and ignores the responsive information and documents 11:59 has already provided. During the meet-and-confer on June 6, 2025, 11:59 agreed

---

Landau Cert. as **Exhibit F)**. The overbreadth of Infinitive's request in this regard is astounding. This is not a case where a Defendant took a handful of trade secrets, but rather copied the entire contents of his 11:59 computer hard drive. It is simply not practicable for 11:59, in an interrogatory response, to identify each and every trade secret contained on that hard drive (numbering in the hundreds) and list specific facts as to each related to 11:59's protection of that information and Infinitive's use thereof. The facts known to 11:59 are already listed in the narrative response. Moreover, the issue of whether 11:59's trade secrets were misappropriated is unlikely to be debated, at least for the vast majority of the stolen data, making Infinitive's request unduly burdensome without the likelihood of it bearing relevant information.

[3] *See* **Exhibits A and D**, Interrogatory No. 11.

6

to review the "Restricted Client List" and provide a revised list in response to representations contained in Defendant Sheridan's discovery responses that he did not work with some of those clients. (*See* Landau Cert., ¶ 8). On June 13, 2025, 11:59 provided a list reducing the number of clients on the Restricted List. (*See* Landau Cert., at ¶ 13; *see also* Email Serving the Revised Restricted List attached to the Landau Cert. as **Exhibit E**). Counsel discussed that given that the Restricted List dictates the scope of much of the parties' discovery, if 11:59 was willing to voluntarily reduce its contents, that should happen first and any supplements to discovery second. (*See* Landau Cert., at ¶ 13)

Moreover, on or about June 6, 2025, in further response to **Interrogatory No. 10**[4] and other document requests, 11:59 supplemented its production to include an export from Salesforce containing a list of projects related to the broader list of clients on the Restricted List whom it had solicited, serviced and/or bid for projects between 2022 and 2025, including the (1) the name of the client or prospective client, (2) the value of the project, (2) the name of the opportunity, (3) whether it closed and when, and (4) in many cases, a primary contact name. (*See* Landau Cert., at ¶ 10). 11:59 is further supplementing its discovery responses with printouts from Salesforce containing additional details for any projects it claims were lost as a result of Defendants' misconduct and agreed to a custodial search of emails relevant to the work it performed or sought to perform for these clients. (*Id.*)

In short, 11:59 has and continues to comply with its discovery obligations in this regard, despite blanket and baseless assertions from Infinitive to the contrary.

---

[4] Infinitive also complains about 11:59's response to Interrogatory No. 1 despite stating during counsels' meet-and-confer that it was not a top priority for Infinitive and discussing that the forthcoming Salesforce records would contain client contact information.

### III.    11:59 Has and Will Continue to Provide Information Related to the Databricks Pipeline

**Interrogatory No. 11** requests that 11:59 provide "in detail" a description of its Databricks pipeline of work at three stages in time, "including a description of every project in the pipeline." (Dkt. 96, p.6)  The interrogatory itself is overbroad and more suitable for document requests, but notwithstanding, 11:59 endeavored to provide a detailed response, identifying each of the projects and clients relevant to the allegations in the Amended Complaint, describing the estimated revenue those projects would have provided, and describing the nature and scope of the work.  (*See* **Exhibit D** at Interrogatory No. 11).

During the meet-and-confer on June 6, 2025, 11:59 further agreed to supplement its response by producing Salesforce data relevant to the projects contained in the Databricks pipeline to the extent it is able to isolate a snapshot in time going back to the timeframes requested.  (*See* Landau Cert., at ¶ 8).  In addition to the aforementioned exports, 11:59 is currently in the process of producing detailed Salesforce records for each project in the pipeline, and is in no way withholding documents or information responsive to this request. (*See* Landau Cert., at ¶ 10)

### IV.    11:59 Has Not Refused to Provide Communications with Former Infinitive Employees

Contrary to Infinitive's assertion, 11:59 has not refused to provide communications with the Former Infinitive Employees.  On the contrary, 11:59 objected that Interrogatory No. 13 was overbroad and unduly burdensome, in particular given that it was more appropriately styled as a document request. (*See* **Exhibit A**)

Notwithstanding, during the meet-and-confer discussion on June 6, 2025, 11:59 agreed to supplement its response by conducting a custodial search for relevant communications, and on June 13, 2025, supplemented the response as follows:

8

> Plaintiff will conduct a custodial search for relevant communications between 11:59 and Former Infinitive Employees from September 30, 2023 to March 30, 2024 and will produce responsive communications subject to relevance to the allegations in the Complaint. Plaintiff will identify whether certain communications involve personal matters, in which case, such communications will not be produced.

(*See* Landau Cert., at ¶ 8(d); *see also* **Exhibit D** at Interrogatory No. 13).

Notably, Infinitive also stood on its objections for any of 11:59's discovery requesting a description of its communications, and 11:59 similarly agreed, during the meet-and-confer discussion, to allow Infinitive to respond via a custodial search and production of documents. *See* Infinitive's Responses to Interrogatories Nos. 9, 14, and 19, attached to the Landau Cert. as **Exhibit B**.

In short, Infinitive's Motion to Compel spills a great deal of ink mischaracterizing 11:59's interrogatory responses, while conveniently ignoring extensive meet-and-confer discussions and the information actually contained in 11:59's extensive responses. Infinitive jumped the proverbial gun by filing its motion before 11:59 could amend its responses by the agreed-upon date, but as set forth above, 11:59 remains committed to providing full and complete discovery responses and will continue to abide by its obligations in this regard. Notwithstanding that Infinitive provided no legal authority to support its request to be awarded fees for its unnecessary motion, under the circumstances described, it is 11:59 who should be awarded fees for being forced to respond to such a motion, which does not have a reasonable basis in law or fact. *Hare v. Comcast Cable Commc'ns Mgmt.*, LLC, 564 Fed. Appx. 23, 25 (4th Cir. 2014) (affirming district court's award of a party's reasonable costs in defending a Motion to Compel where the moving party's motion contained substantial misrepresentations).

## CONCLUSION

As such, and as set forth above, Infinitive's Motion to Compel Complete Interrogatory Responses (Dkt. 95) should be denied.

Respectfully submitted,

**POTTER & MURDOCK**
*Attorneys for Plaintiff – Counter Defendant*
*M Corp dba 11:59*


By: ___*/s/ John M. Murdock*___
    John M. Murdock, Esq.
    Brian S. Szmak, Esq.
    252 N. Washington Street
    Falls Church, VA  22046
    jmurdock@pottermurdock.com
    bszmak@pottermurdock.com
    Telephone:  (703) 992-6950

**NUKK-FREEMAN & CERRA, P.C.**
*Attorneys for Plaintiff – Counter Defendant*
*M Corp dba 11:59*


By: ___[signature: Stacy Landau]___
    Stacy Landau, Esq.
    Kegan Andeskie, Esq.
    26 Main Street, Suite 202
    Chatham, NJ, 07928
    kandeskie@nfclegal.com
    slandau@nfclegal.com
    Tel.: (973) 665-9100
    Fax: (973) 665-9101

Dated: June 18, 2025

**CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that on this 18th day of June, 2025, a copy of the foregoing was filed with the United States District Court for the Eastern District of Virginia, Alexandria Division using the CM/ECF system, with a copy of being served via CM/ECF on all counsel of record in this matter.

                                                 */s/ John M. Murdock*
                                                 John M. Murdock, Esq.

Dated:  June 18, 2025