IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| M CORP DBA 11:59, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-1823 |
| | ) | |
| INFINITIVE, INC., *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

### DEFENDANT INFINITIVE, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO COMPEL COMPLETE INTERROGATORY RESPONSES

Although high on invective,[1] 11:59's Opposition brief (Dkt. 100) does little to actually defend its deficient responses to Infinitive's reasonable discovery requests. For the reasons stated in the opening brief (Dkt. 96) and those below, the Motion to Compel should be granted.

### THE PARTIES' MEET AND CONFER

A great deal of 11:59's Opposition is dedicated to discussing the parties' meet-and-confer conversation that occurred on June 6, 2025. In 11:59's telling, the parties reached some sort of an agreement, whereby 11:59 would provide the information requested on June 13 and Infinitive would refrain from filing a motion to compel. That is not accurate. In reality, Counsel for 11:59 never committed to any supplementation—only expressing information they might be willing to

---

[1] For example, the Opposition repeatedly refers to Infinitive's Motion as "frivolous." Regardless of the eventual result of the Motion, it seems clear that Infinitive's Motion is substantially justified and not remotely frivolous. Similarly, in multiple spots, the Opposition suggests that the subject matter at issue is somehow "moot." Yet as 11:59 was well-aware before filing its brief, Infinitive continues to believe it is entitled to information beyond what has been supplied— which almost by definition means the matter is not moot. (*See* Dkt. 100-7.) 11:59's overheated rhetoric is unfortunate.

provide, all of which was insufficient to meet Infinitive's requirements. Undersigned stated at multiple times to Counsel for 11:59, that if they ultimately chose to supplement their responses, they should do so by Wednesday [June 11] to preserve Infinitive's ability to get a motion heard by June 20.

11:59's contrary recollection is undermined by the fact that: (i) Counsel did not exchange any type of confirming email (which is typically present when an agreement is reached); and (ii) the supplementary responses (Dkt. 100-5) do not contain any of the information Infinitive was actually insisting on receiving in order to resolve the matter. (*See* Dkt. 100-7.)

More importantly, the minutiae of what was said at the meeting between Counsel does not seem to the overly pertinent to the question before the Court on the instant Motion. Instead, the primary question is whether 11:59's responses, even as supplemented, are sufficient to meet its discovery obligations. For the reasons explained, the answer to that question is in the negative, and consequently, 11:59 should be compelled to provide complete responses to the interrogatories at issue.

## **ARGUMENT**

**A.     11:59 Should Be Compelled to Provide Contact Information for Relevant Third Parties in Response to Interrogatory No. 1.**

As noted in its opening brief, Interrogatory No. 1 required 11:59 to identify (including contact information) those with knowledge of the allegations in the Amended Complaint. (Dkt. 96-1.) In its initial responses, 11:59 identified "11:59's existing and prospective clients" as those with knowledge. (Dkt. 96-2, No. 1, ¶ 10.) 11:59 was clearly correct in including this reference, as among other things, the clients and prospective clients have knowledge of the relationships and work 11:59 allegedly lost due to Mr. Sheridan's alleged conduct. However, 11:59 did not provide the identities of the individual clients/prospective clients or, more

importantly, their contact information. (*Id.*)  11:59 has never provided any legal basis for refusing to provide this basic information to Infinitive, so Infinitive moved to compel. (*See* Dkt. 95, 96 at 5-6.)

Instead of providing that information, which was clearly required, 11:59 served amended responses that *simply removed* reference to 11:59's existing and prospective clients altogether. (Dkt. 100-5, No. 1.)  But this alteration defies logic.  Both parties know that the clients and prospective clients have valuable information, and it is difficult to discern why they were removed altogether from the response.  Unsurprisingly, 11:59's Opposition brief fails to even attempt to defend this conduct. (*See generally* Dkt. 100.)

Given that this issue appears conceded, 11:59 should be compelled to fully respond to Interrogatory No. 1 and provide a list of the clients and prospective clients with knowledge along with their contact information.

**B.    11:59's Improper Objection to Each Contention Interrogatory Should Be Stricken and it Should Be Compelled to Fully Respond to Interrogatory Nos. 2-6.**

It remains confusing trying to understand 11:59's position with regard to its contention interrogatory objections in Interrogatory Nos. 2-6, which typically states:

> Plaintiff further objects on the grounds that this is a contention interrogatory, which is improper as it requires that Plaintiff provide the equivalent of a narrative account of its case, as well as a legal conclusion. See, e.g., Rainey for Estate of Rainey v. Anderson, No. 2:17cv444, 2018 WL 3636596, at *2 (E.D. Va. Apr. 11, 2018).

(*E.g.,* 96-2, No. 3.)  The words "this is a contention interrogatory, which is improper" clearly suggest that 11:59 considers contention interrogatories to be improper.  If that is not what 11:59 meant, it should have withdrawn the objection upon Infinitive's request.  In its Opposition, 11:59 claims it has not withheld any information based on this objection. (*See* Dkt. 100 at 3.)  If true, then it is confusing why 11:59 has steadfastly refused to withdraw the objection and continues to

3

fight for its inclusion. Proper objections to interrogatories are stated in order that the responding party may withhold information otherwise required to be provided — if 11:59 has no intention of withholding information, then it should not have stated the objection, and it should not continue to defend its inclusion in its responses.

For the reasons stated in its opening brief, it remains the case that contention interrogatories are proper. *See* FRCP 33(a)(2). 11:59's objection to the contrary should be stricken. If any information has been withheld pursuant to this objection, it should be provided.

**C.      11:59 Has Not Fully Responded to Interrogatory No. 2.**

In Interrogatory No. 2, Infinitive sought, among other things, an identification of each trade secret 11:59 contends Infinitive misappropriated, the value of that trade secret, and the facts that support the contention that *Infinitive* misappropriated that trade secret. (*See* Dkt. 96-1, No. 2.) 11:59's amended response continues to provide a long narrative that does not answer the actual question propounded. While in the amended responses, 11:59 identifies examples of trade secrets it alleges Mr. Sheridan took, it is difficult to understand which trade secrets *Infinitive* allegedly misappropriated according to 11:59. As previously noted, Infinitive needs this specific identification of which documents actually hold the trade secrets that is the basis of the claim against the company.

Notably, as best as can be discerned, the only objections 11:59 preserved is that it: (i) "seeks a legal conclusion regarding the terms 'trade secrets' and 'misappropriation'"; (ii) is premature regarding value of any trade secrets; and (iii) is a contention interrogatory. The first and third objections are not legitimate objections. *See* FRCP 33(a)(2). Consequently, at least as to the information other than the value, 11:59 has no legal basis to refuse providing the information requested. *See* FRCP 33(b)(4). It should be compelled to do so.

**D.      11:59 Should be Compelled to Detail its Lost Revenue as Required by Interrogatory No. 8.**

In Interrogatory No. 8, Infinitive asked for a description of any loss of revenue that 11:59 experienced for which Infinitive is liable, including the identity of the customer, project, the estimated lost revenue, and facts that support these contentions. (Dkt. 96-1, No. 8.)

Infinitive pointed out in its initial deficiency letter, the meet-and-confer, and then in its opening brief, that 11:59's response to Interrogatory No. 8 was facially deficient as Plaintiff did not answer the actual question and simply cut-and-pasted its initial disclosure response regarding *damages* without regard to the fact that interrogatory sought information about *revenue*. Despite repeatedly pointing this deficiency out, 11:59 produced the *exact same* nonsensical cut-and-paste response to this interrogatory in its Amended Responses. (Dkt. 100-5, No. 8.) Again, 11:59 states a cumulative amount of "lost profits," "investment," "forensic analysis fees," and "attorneys' fees." None of that is responsive to the question actually propounded — to detail the <u>revenue</u> allegedly lost. 11:59 should be compelled to properly respond to the interrogatory.

**E.      11:59 Should be Compelled to Provide Information Regarding its Claimed "Client List" in Response to Interrogatory No. 10.**

In Interrogatory No. 10, Infinitive sought basic information about each of the "clients" included on the client list to understand if the list is accurate. The information sought is simply: (i) point of contact; (ii) date the relationship was established; (iii) revenue 11:59 earned from the client before Mr. Sheridan's hire, during his employment, and following his termination; and (iv) a description of the services Mr. Sheridan provided to the client.

11:59's initial responses stood on the following objections:

> Plaintiff objects to the Interrogatory on the grounds that it is overbroad and unduly burdensome as it is not reasonably limited in time and scope. Plaintiff further objects on the grounds that the Interrogatory seeks information that is proprietary and highly confidential regarding Plaintiff's

5

> clients, accounting data, and services which is not relevant to the claims or defenses in this action.

(Dkt. 96-2, No. 10.) In its opening brief, Infinitive explained that these objections were without merit. (Dkt. 96 at 5.) In its amended responses, 11:59 provided the same response and again <u>stood on its objections</u>. (Dkt. 100-5, No. 10.) However, in its Opposition, 11:59 fails to explain how those objections justify its failure to respond. (*See* Dkt. 100 at 6-7.) Instead, the Opposition reads as if 11:59 had provided the information requested. (*See id.*) This is not accurate.

At this point, having conceded its objections are without merit, 11:59 should be compelled to provide a complete response to Interrogatory No. 10.

**F.      11:59 Should Be Compelled to Provide Information Regarding its Databricks "Pipeline" in Response to Interrogatory No. 11.**

Interrogatory No. 11 asked for basic information regarding 11:59's claimed pipeline of Databricks work at three time periods, including a description of the project, the identification of the client, the amount of projected revenue, and an explanation of where that revenue projection came from. Even in its amended responses, 11:59 has not fully provided that information. (*See* Dkt. 100-5, No. 11.) In its Opposition, 11:59 claims that the interrogatory is "overbroad and more suitable for document requests"— but those objections were not asserted in the response. The substantive response does not provide information as to three time periods and does not attempt to explain the basis for the revenue numbers claimed. (*See id.*) The response further states that 11:59 will supplement its deficient response with documents "on a rolling basis." (*Id.*) In other words, at some undisclosed point in the future, 11:59 might give this basic information to Infinitive. This is not a proper response to an interrogatory. 11:59 should be compelled to fully respond.

**G.      11:59 Should Be Compelled to Provide Complete Responses to Interrogatory No. 13.**

In its initial response to Interrogatory No. 13, seeking the communications with the individuals who are believed to have been improperly solicited, 11:59 initially stood on its

6

groundless objections— including that somehow the interrogatory was "not relevant to any party's claim or defense." (*See* 96-2, No. 13.) Infinitive properly moved to compel responses given that the objections had no merit.

Thereafter, 11:59 filed its amended responses, which, for some unknown reason, <u>continue to assert that the request is not relevant to any party's claim or defense.</u> (*See* 100-5, No. 13.) The objections are clearly without merit, and 11:59 has not attempted to defend them.

With regard to its amended substantive response, 11:59 has said:

> RESPONSE: Subject to and without waiving the foregoing objections, Plaintiff will conduct a custodial search for relevant communications between 11:59 and Former Infinitive Employees from September 30, 2023 to March 30, 2024 and will produce responsive communications subject to relevance to the allegations in the Complaint. Plaintiff will identify whether certain communications involve personal matters, in which case, such communications will not be produced.

(*Id.*)

Although this is progress from the initial response, it is still not sufficient. To begin with, it is unclear why the communications would be limited to begin on September 30, 2023, when Mr. Sheridan began working for 11:59 (with a non-solicitation covenant) back in <u>March</u> 2023. Second, 11:59 says it will perform a search but provides no date on which the results will be produced. Third, 11:59 states it will not produce communications regarding "personal matters" without any indication of how such a matter will be determined. Fourth, 11:59 has made no attempt to gather the non-documentary communications, nor has it made any commitment to collect recollections of those communications.

11:59's groundless objections should be stricken, and it should be compelled to provide a complete response to this interrogatory.

Dated: June 18, 2025                                    Respectfully submitted,

                                                                         /s/ Micah E. Ticatch
                                          Micah E. Ticatch, Va. Bar No. 83351
                                          John W. H. Harding, Va. Bar No. 87602
                                          ISLER DARE, P.C.
                                          1945 Old Gallows Road. Suite 650
                                          Vienna, Virginia 22182
                                          Phone: (703) 748-2690
                                          Facsimile: (703) 748-2695
                                          mticatch@islerdare.com
                                          jharding@islerdare.com
                                          *Counsel for Infinitive, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

          /s/ Micah E. Ticatch
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
mticatch@islerdare.com

*Counsel for Infinitive, Inc.*