## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| M CORP DBA 11:59, | : | |
| | : | Civil Action: 1:24-cv-1823 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INFINITIVE, INC., JOSEPH BRADLEY | : | |
| SHERIDAN, DATABRICKS INC., | : | |
| WILLIAM McKINNEY, CHERYL | : | |
| MILES, AND DOES 1-25, INCLUSIVE. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| INFINITIVE, INC., | : | |
| | : | |
| Counterclaim | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| M CORP DBA 11:59 AND ALISON | : | |
| MOYE. | : | |
| | : | |
| Counterclaim | : | |
| Defendants. | : | |

**PLAINTIFF/COUNTER-DEFENDANT M CORP DBA 11:59 AND COUNTER-DEFENDANT ALISON MOYE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF INFINITIVE INC.'S COUNTERCLAIMS**

## PRELIMINARY STATEMENT

Plaintiff/Counter-Defendant M Corp d/b/a 11:59 ("11:59" or the "Plaintiff") and Defendant/Counter-Plaintiff Infinitive, Inc. ("Infinitive") are competitors in the data consulting industry.  Over a year prior to the commencement of this litigation, on August 14, 2023, Infinitive and 11:59 entered into a Settlement Agreement (the "Settlement Agreement") regarding allegations that 11:59's employees, Alison Moye ("Moye") and Joseph Bradley Sheridan ("Sheridan"), each of whom had previously been Infinitive's employees, tortiously interfered with Infinitive and recruited other Infinitive employees to work for 11:59 in alleged violation of their Infinitive employment agreements.  Infinitive had threatened to bring claims for "tortious interference with Infinitive's contracts and employment relationships" (the "Threatened Claims").  Infinitive and 11:59 entered into the Settlement Agreement "to resolve the Threatened Claims without need to resort to legal action."

At the time of the Settlement Agreement, Sheridan was employed by 11:59.  On or about September 6, 2024, Sheridan left 11:59 to return to Infinitive.  Among other things, Sheridan disparaged 11:59 to its customers and stole an entire hard drive of 11:59's confidential and proprietary business information with the goal of using that work product to solicit and service 11:59's current and prospective clients at Infinitive.  Accordingly, in October 2024, 11:59 commenced suit against Infinitive and Sheridan, and obtained a temporary restraining order preventing Sheridan and Infinitive from, among other things, soliciting 11:59 clients.

As the litigation continued, in an attempt to gain leverage in the claims it was facing, Infinitive moved to amend its Answer and was granted the ability to add Counterclaims against 11:59 and Moye, who until that point was a non-party.  Despite having agreed in the Settlement Agreement not to sue 11:59 for interfering in its client and employee relationships, Infinitive nonetheless brought claims against Moye for breach of contract, 11:59 for tortious interference,

and 11:59 and Moye for conspiracy in violation of VA Code § 18.2-499. None of these Counterclaims state a claim.

In connection with the Settlement Agreement, Infinitive waived the breach of contract claim against Moye, and should be estoppped from now asserting it. Moye is also a third-party beneficiary to the Settlement Agreement and can enforce it against Infinitive. Moreover, Infinitive fails to allege any facts to support a breach of contract claim against Moye. As such, the Court must dismiss Counterclaim One, breach of contract against Moye. The Court only has personal jurisdiction over Moye in connection with her employment agreement with Infinitive ("Employment Agreement"). Once the Court dismisses the breach of contract claim against Moye, the Court must dismiss Moye for lack of personal jurisdiction.

The Settlement Agreement also precludes Infinitive's claims against 11:59 for tortious inference, as does Infinitive's failure to plead that 11:59 engaged in any improper methods.

Infinitive's statutory conspiracy claim fails for several reasons. Infinitive's claim under § 18.2-499 is barred by the intra-corporate immunity doctrine. Even if that doctrine does not apply, the statutory conspiracy claim must be dismissed if the tortious interference claim against 11:59 is dismissed, as Infinitive has not alleged any other underlying tort against 11:59. As to Moye, no underlying tort is alleged and thus, no conspiracy claim can lie against her.

Finally, Moye is not a proper party to this action. Infinitive never moved to add a Third-Party Defendant pursuant to Fed. R. Civ. P. 14(a).

For these reasons and as will be set forth in more detail below, the Court must dismiss Moye from this action and dismiss all the Counterclaims against both Counter-Defendants.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]:

### A. Early Procedural History

1.      On October 15, 2024, Plaintiff, M Corp dba 11:59 ("Plaintiff" or "11:59") filed a Verified Complaint and Order to Show Cause and Temporary Restraining Order ("TRO") against Defendants Infinitive, Inc. ("Infinitive") and Joseph Bradley Sheridan ("Sheridan"). *See,* Docket Entry ("D.E.") 1 and 6.

2.      On October 30, 2024, a hearing on Plaintiff's application for a TRO was held before the Honorable Rossie D. Alston, U.S.D.J. *See*, D.E. 30.

3.      On November 6, 2024, Judge Alston granted Plaintiff's application for a TRO. *See,* D.E. 32.

4.      On December 10, 2024, the Court entered Infinitive, Sheridan, and 11:59's stipulated Preliminary Injunction, superseding the TRO. *See*, D.E. 41.

5.      On December 20, 2024, after failed attempts to resolve the matter without litigation, Plaintiff filed an Amended Verified Complaint adding Defendants Databricks, Inc., Cheryl Miles, and William McKinney.[2] *See*, D.E. 43.

6.      On January 3, 2025, Sheridan filed an Answer to the First Amended Verified Complaint. *See*, D.E. 49.

7.      On March 14, 2025, Infinitive and Databricks filed Answers to the First Amended Verified Complaint. *See*, D.E. 65, 68.

8.      On May 14 2025, Infinitive filed a Motion to File an Amended Answer and Counterclaim ("CC"). *See*, D.E. 77.

---

[1] Although Defendant/Counter-Plaintiff Infinitive's well pled, non-conclusory allegations are assumed to be true for the purposes of this Motion to Dismiss, 11:59 does not concede the accuracy of the same and expressly reserves the right to dispute any and all factual allegations in the Counterclaims.

[2] On April 11, 2025, 11:59, Databricks, Miles and McKinney agreed to dismiss Miles and McKinney from the matter without prejudice. D.E. 71.

9.      11:59's Response to Infinitive's Motion did not take a position regarding the request to amend.  However, 11:59's Response noted that Alison Moye ("Moye") was not a party to the litigation at this point, did not appear in connection with the motion and did not consent to or oppose it.  11:59 further noted that Infinitive's Motion failed to include a proper caption and its proposed claims against Moye, a new party, were more properly characterized as impleader against a Third-Party Defendant.  *See*, D.E. 80.

10.     On May 23, 2025, the Court granted the Motion to File an Amended Answer and Counterclaim.  *See*, D.E. 84.

**B.  Infinitive's Counterclaims Against 11:59 and Moye:**

11.     Infinitive brought Counterclaims against 11:59 as well as against the new party, Moye.  *See,* D.E. 86.  The claims contained in the Counterclaims are as follows:

> i.   Counterclaim I: Breach of Contract (against Moye only)
> ii.  Counterclaim II: Tortious Interference with Business Expectancies (against 11:59 only)
> iii. Counterclaim III: Conspiracy in Violation of VA Code 18.2-499 (against 11:59 and Moye)

**i.      Counterclaim One – Infinitive Alleges Moye Breached the Employee -Solicitation Provision of Her Infinitive Employment Agreement**

12.     Infinitive alleges Defendant Sheridan and Counterclaim Defendant Moye participated in improper solicitations of Infinitive employees, that are at the center of each of their Counterclaims.  *See,  e.g*, D.E. 86, Counterclaims ("CC") ¶ 42.

13.     Sheridan served as a Director with Infinitive until about March 2023.  Sheridan joined 11:59 in late March 2023 as Vice President of Data Analytics.  CC ¶ 17.  On August 22, 2024 Sheridan resigned from 11:59 and on September 9, 2024, rejoined Infinitive.  *See*, D.E. 86 ¶ 45, Admitted.

14.    Moye served as an executive with Infinitive until early 2023.  Moye joined 11:59 thereafter and currently serves as 11:59's Chief Operating Officer.  CC ¶ 4.  Moye resides in Pennington, New Jersey since 2021.  *Id.*; *see also,* Declaration of Alison Moye ("Moye Declaration") ¶ 3.

15.    Jim McGinn ("McGinn") was an executive with Infinitive from 2018 to 2021. More than a year following McGinn's separation from Infinitive, in or around February 2023, he joined 11:59 as its Chief Technology Officer.  CC ¶ 14.

16.    Crystal Hair ("Hair") was a Principal and Market Technology Lead for Infinitive from 2019 through 2022.  Hair started with 11:59 in or around March 2023 as a Vice President – Cloud.  CC ¶15.

17.    Each of these former Infinitive employees entered into an Employment Agreement with Infinitive, which contain restrictive covenants limiting their ability to solicit "any of its existing clients or prospects" for one year following their separation from the Company.  CC ¶¶ 12; *see also*, Moye Declaration **Exhibit 2.**

18.    The Employment Agreement defines "client" as "any entity for which [the employee] had personal involvement in the development, creation, design, marketing or sales of a competitive Service of Product" during the latter twelve months of that employee's employment with Infinitive.  The Employment Agreement further prohibited them from soliciting or hiring any Infinitive employee for one year following their separation from Infinitive.  *Id.*

19.    Although the Counterclaims detail the restrictive covenant obligations of the former Infinitive employees, Infinitive only includes allegations regarding the duration of the non-solicit obligations of Moye and Sheridan.  CC ¶ 42.

20.    In the Facts section of the Counterclaims, there is not a single non-conclusory allegation regarding any misconduct engaged in by Moye.  The only allegation related to Moye's

conduct contends that she must have been behind her sister Laura Moye's decision to leave Infinitive and join 11:59.  CC ¶ 51 ("Laura Moye left Infinitive because of Alison Moye's solicitation of her in breach of Ms. Moye's contractual obligations.").  However, Moye was not even a participant in the text conversation Infinitive includes where Laura Moye's potential employment with 11:59 was discussed.  CC ¶ 49.

21.    Despite making no specific allegations involving Moye, Moye is the only 11:59 employee who Infinitive individually names in the Counterclaims.  Infinitive did not name Sheridan, despite him being at the center of Infinitive's allegations (and that he is a party to this lawsuit where he is accused of a far-reaching scheme of stealing 11:59's clients, prospects and confidential information on behalf of Infinitive).  The Counterclaims do not allege that Sheridan is no longer an Infinitive employee.

22.    Infinitive alleges that 11:59 hired eleven of Infinitive's employees but does not state the dates of each hire or specify whether the hires occurred during any alleged restricted period. CC ¶ 57.

### ii.    Counterclaims Two and Three – Infinitive Alleges 11:59 Interfered with its Business Expectancies and Conspired to Damage Same

23.    Next, in its Counterclaims, as a basis for liability against 11:59 (but not Sheridan) Infinitive alleges that Sheridan breached his non-solicitation of clients covenant to Infinitive.  CC ¶ 69.

24.    Infinitive alleges that Sheridan had an obligation in his Employment Agreement not to interfere with any Infinitive client relationships for any entity he had "personal involvement in the development, creation, design, marketing or sales of a competitive Client Service or Product (or assisted or supervised such conduct)" during the prior twelve-month period prior to his

separation from Infinitive.   This restriction had a duration of twelve months following his separation from Infinitive.  CC ¶ 12.

25.     Infinitive alleges that Sheridan breached those obligations when he took steps to move business related to three customers from Infinitive to 11:59.  CC, *e.g.*, ¶¶ 22-31, 69.

26.     Infinitive also alleges that 11:59 copied and replicated Infinitive's work product, by McGinn having retained Infinitive information (two PowerPoint slides which appear in the Counterclaims) and "rebuilt" in a presentation for 11:59.  CC ¶¶ 37, 39, 69.

27.     Infinitive alleges that 11:59, Moye, McGinn, Hair, Sheridan and Infinitive's employee Sellery conspired to injure Infinitive's business interests.  CC ¶ 73.

### iii.     11:59 and Infinitive Enter into a Settlement Agreement Regarding 11:59's Alleged Tortious Interference by Recruiting and Hiring Infinitive Employees

28.     On August 14, 2023, Infinitive and 11:59 entered into a Settlement Agreement regarding allegations that Moye and Sheridan recruited Infinitive's employees to work for 11:59 in alleged violation of their Infinitive Employment Agreements.  *See*, Moye Decl., **Exhibit 1**.

29.     Specifically, Infinitive alleged that its former employees were recruited to 11:59 "in violation of Mr. Sheridan and Ms. Moye's Non-Solicitation Covenants."  Infinitive threatened to bring claims for "tortious interference with Infinitive's contracts and employment relationships" (the "Threatened Claims").  *Id.*

30.     Infinitive and 11:59 entered into the Settlement Agreement "to resolve the Threatened Claims without need to resort to legal action."  *Id.*

31.     Pursuant to the Settlement Agreement, 11:59 agreed:

> **1.  Restrictive Covenant**. Until the expiration of Ms. Moye's Nonsolicitation Covenant (on March 30, 2024), 11:59 agrees not to: (i) solicit or induce, or attempt to solicit or induce, any Infinitive employee to sever his or her employment with Infinitive for a position of employment outside of Infinitive; or (ii) hire, or attempt to hire, any Infinitive employee. For

avoidance of doubt, nothing in this Agreement shall restrict 11:59's ability to hire an Infinitive employee who was involuntarily terminated by Infinitive.

2. **Covenant Not to Sue.** In reliance on the Restrictive Covenant outlined in Paragraph 1 of this Agreement, Infinitive covenants not to sue or otherwise assert any legal claim in any forum against 11:59 for the Threatened Claims, *provided that* this Covenant Not to Sue shall have no effect to the extent 11:59 breaches the Restrictive Covenant outlined in Paragraph 1 of this Agreement.

*Id.*

32.     Despite having agreed not to sue 11:59 for hiring Infinitive employees during Sheridan and Moye's restricted periods under their Employment Agreements, Infinitive nonetheless brought claims against Moye, 11:59's Chief Operating Officer, and 11:59 for causes of action arising directly out of the alleged solicitation/hiring of Infinitive's employees.

33.     Despite having agreed not to sue 11:59 for interfering in its client and employee relationships, Infinitive nonetheless brought claims against 11:59 for tortious interference and 11:59 and Moye for conspiracy.

### iv.     Without the Employment Agreement, the Court Does Not Have Jurisdiction Over Moye

34.     Moye resides permanently in New Jersey and has resided in New Jersey since 2021. Moye Decl. ¶ 3

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint (or counterclaim) must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  When reviewing a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the

plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

Moreover, consideration of a document attached to a motion to dismiss under Rule 12(b)(6) is permitted "when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015). Infinitive relies upon Moye's Employment Agreement, both to obtain personal jurisdiction over her and to allege, in Counterclaim One, that she breached that agreement. *See*, Moye Decl. **Exhibit 2;** *see also*, D.E. 86 ¶ 12. Moye's Employment Agreement is clearly integral to the Counterclaims.

A settlement agreement is integral to the complaint when it would bar claims therein. *See*, *Webster v. Austin*, No. 1:24-CV-00636, 2024 WL 4336741, at *1, fn 2 (E.D. Va. Sept. 27, 2024), aff'd sub nom. *Webster v. Hegseth*, No. 24-2140, 2025 WL 800222 (4th Cir. Mar. 13, 2025) (considering Settlement Agreement as integral to Complaint); *Bradley v. Gannett Co. Inc.*, No. 1:23-CV-1100 (RDA/WEF), 2024 WL 3905817, at *6, fn 15 (E.D. Va. Aug. 20, 2024) citing *Advanced Cleanup Techs., Inc. v. BP Am. Inc.*, 2015 WL 13841820, at *2 n. 2 (C.D. Cal. Oct. 9, 2015) ("A well-established application of [the incorporation by reference] doctrine is a settlement agreement that, if valid, would bar claims alleged by the plaintiff in his or her complaint"). Here, the Court may consider the Settlement Agreement as integral to the Counterclaims, in that it bars them.

By comparison, in resolving motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(2), "the court's review is not confined to the complaint; rather, the

court may consider 'the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint' in resolving a personal-jurisdiction challenge." *Foster v. Digital Safety Prods., LLC*, No. 4:24-CV-00051, 2025 WL 1483696, at *2 (W.D. Va. May 23, 2025) (quoting *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016)).  The Court may consider Ms. Moye's declaration, submitted herewith.

## ARGUMENT

I.  **INFINITIVE FAILS TO STATE A CLAIM AGAINST MOYE FOR BREACH OF THE INFINITIVE EMPLOYMENT AGREEMENT (COUNTERCLAIM ONE)**

### A.  Moye May Enforce The Settlement Agreement

Infinitive cannot sue for claims related to Moye's alleged breach of her non-solicitation obligations.  Via the Settlement Agreement, Infinitive agreed not to sue for breaches of Moye's non-solicit.  *See*, e.g., *Laurel Gardens, LLC v. MJL Enters.*, LLC, No. 2:18-cv-210, 2018 WL 3468362, at *4 (E.D. Va. July 18, 2018) (granting Plaintiff's motion to dismiss where the alleged "claims fall within the scope of the release" contained in the parties' settlement agreement).  The Settlement Agreement requires that Counterclaim One be dismissed.

The Settlement Agreement contains the following, in relevant part:

WHEREAS, on March 23, 2023 and March 30, 2023, respectively, former employees Joseph Brad Sheridan and **Alison Moye terminated their employment with Infinitive** and accepted employment with 11:59; and that following Mr. Sheridan's and Ms. Moye's hire by 11:59, nine other employees terminated their employment with Infinitive to take positions with 11:59 (the "Former Employees"); and

> WHEREAS, Infinitive has alleged that the Former Employees were recruited to 11:59 in violation of Mr. Sheridan and **Ms. Moye's Non-Solicitation Covenants**; and

> WHEREAS, Infinitive has threatened to bring claims against 11:59 for **tortious interference with Infinitive's contracts and employment relationships (the "Threatened Claims")**…

2. **<u>Covenant Not to Sue.</u>** … **Infinitive covenants not to sue** or otherwise assert any legal claim in any forum against 11:59 for the **Threatened Claims**…

[Moye Decl. **Exhibit 1** (emphasis added)].

Infinitive agreed not to sue in connection with Moye's alleged recruitment of Infinitive's employees, on behalf of 11:59, in alleged breach of her Non-Solicitation Covenant.

To the extent that Infinitive intends to argue that it is permitted to bring the claim against Moye because the Settlement Agreement was executed between 11:59 and Infinitive only, that argument fails. Infinitive not only agreed not to sue 11:59 for soliciting or hiring its employees, by executing the Settlement Agreement, it waived enforcement of the non-solicitation provision in the Employment Agreement. Moye's Infinitive Employment Agreement states in part:

> Waiver: Amendment: Modification. The waiver by Company of a term or provision of this Agreement, or of a breach of any provision of this Agreement by me, shall not be effective unless such waiver is in writing signed by Company.

[Moye Decl. **Exhibit 2**]. Infinitive waived the Employment Agreement, in a writing signed by the Company – the Settlement Agreement. [Moye Decl. **Exhibit 1**]. The owner of a contract "right may waive it expressly, either in writing or by parol, and *impliedly by inconsistent conduct*." *See*, e.g., *RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*, 297 Va. 327, 341, 827 S.E.2d 762, 769 (2019) (quoting *Roenke v. Virginia Farm Bureau Mut. Ins. Co.*, 209 Va. 128, 135, 161 S.E.2d 704 (1968) (emphasis in original)). Here, the Settlement Agreement was expressly negotiated to cover the *exact* conduct under which Infinitive is currently suing Moye, and nothing in the agreement or otherwise suggests that Infinitive intended to preserve separate rights to pursue claims against Moye, individually, especially where all of the complained of conduct is alleged to have occurred while she employed by 11:59.

Furthermore, Moye is a third-party beneficiary of the Settlement Agreement. By referencing both her employment at Infinitive and 11:59, and by the parties' agreement that

Infinitive would not sue based on Moye's alleged solicitation of Infinitive's employees, the Settlement Agreement evidenced an intent by Infinitive and 11:59 to confer a benefit on Moye. *See*, *Gupta v. Northam*, No. 6:19-CV-00015, 2020 WL 1277224, at *2 (W.D. Va. Mar. 17, 2020) (citations omitted). The Settlement Agreement lacks any language explicitly precluding Moye from being a third-party beneficiary. *Id.*, at *2.

Notwithstanding any argument to the contrary, Infinitive is barred by equitable estoppel from asserting claims against Moye. "Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (citation omitted). Where a signatory relies on the terms of, and seeks benefits from, a contract in a suit against a non-signatory, the signatory is estopped from asserting that the non-signatory cannot enforce the contract. *See*, *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (citation omitted) (regarding enforcement of an arbitration clause). "This legal principle rests on a simple proposition: it is unfair for a party to 'rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage.'" *Wachovia Bank* 445 F.3d at 669 (citing *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir.1981)). Here, Infinitive received the benefit of the Settlement Agreement preventing Moye from continuing to allegedly solicit its employees – there are no allegations in the Counterclaims that Moye solicited any employees after the execution of the Settlement Agreement. Infinitive must be estopped from claiming that it can still sue Moye despite the Settlement Agreement. Simply put, it belies common sense that Infinitive should be able to negotiate the benefit of a settlement agreement based upon alleged activities of 11:59 employees, and then proceed, years later, to sue those employees over that same alleged conduct.

**B. Regardless of the Settlement Agreement, Infinitive Fails to State a Breach of Contract Claim**

The Court must dismiss Counterclaim One because Infinitive failed to allege any facts to support the claim. On its face, the non-solicitation agreement Moye allegedly breached says:

> 12.2 Non-solicitation of Company's Employees. During the term of this Agreement and for a period of twelve (12) months after my employment ends for any reason, or from the date of entry by a court of competent jurisdiction of a final judgment enforcing this Agreement (whichever is later), I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage the Company's business by hiring, soliciting, inducing, encouraging or attempting to hire any of the Company's employees or causing others to hire, solicit, induce or encourage any of the Company's employees **to discontinue their employment with Company or to seek or accept any employment with any other business entity** that performs competitive Client Services or Products.

D.E. 86 ¶ 12 (emphasis added); see also Moye Decl. **Exhibit 2**. There is no allegation in the Counterclaims, however, that *Moye* solicited any Infinitive employee to discontinue their employment with Infinitive or to seek or accept any employment with any other business entity. Compare, e.g., D.E. 86 ¶ 45 ("Mr. McGinn, Ms. Hair, and Mr. Sheridan conspired to recruit Infinitive employee Derek Kennedy") and ¶ 48 ("Mr. Sheridan discussed 11:59 stealing additional Infinitive employees: Michael Sellery and Laura Moye," Moye's sister). Without stating a single supportive fact, Infinitive merely jumps to the legal conclusion that "Laura Moye left Infinitive because of Alison Moye's solicitation of her in breach of Ms. Moye's contractual obligations." D.E. 86 ¶ 51. The court need not accept a legal conclusion as true. *See*, *Wahi*, 562 F.3d at 616 n.26; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Thus, the Court must dismiss the breach of contract counterclaim.

## II.   IF COUNTERCLAIM ONE FOR BREACH OF CONTRACT IS DISMISSED, THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MOYE

Infinitive alleges personal jurisdiction over Moye based on the Employment Agreement executed with that company. D.E. 86 ¶ 6.  It asserts that the "claims at issue here arise out of and relate to that contract."  *Id*.  Only Counterclaim One, breach of contract, however, relates to the Employment Agreement.  Without the Virginia choice of law and forum selection provision in the Employment Agreement implicated by Counterclaim One, the Court does not have personal jurisdiction over Moye, a New Jersey resident since 2021.

The court's analysis of whether it has specific personal jurisdiction[3] over a party involves:

> [A] three-part test, requiring trial courts to consider: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *5 (E.D. Va. July 11, 2022), aff'd as modified sub nom.  *Andreadakis v. Centers for Disease Control & Prevention*, No. 22-1953, 2024 WL 1736720 (4th Cir. Apr. 23, 2024), citing *Consulting Eng'rs Corp. v. Geometric Ltd*, 561 F.3d 273, 278 (4th Cir. 2009).

Apart from her employment contract with Infinitive, and that *until 2023*, Moye was employed by Infinitive, headquartered in Virginia (D.E. 86 ¶2), there are no allegations to support Moye (a New Jersey resident since 2021) has minimum contacts with Virginia to establish personal jurisdiction over her.  Indeed, all of the her alleged bad acts took place (1) while she lived and

---

[3] As an individual who at all relevant times has been domiciled in New Jersey, there is no basis for general personal jurisdiction over Ms. Moye in Virginia.  *See*, Moye Decl.

worked in New Jersey and (2) for a company (11:59) headquartered in California.[4]  *See* Moye Decl. ¶ 3.

In this regard, if the Court dismisses Counterclaim One, there is no basis for personal jurisdiction over Moye for the remaining Counterclaim against her and the Court should dismiss all the claims against her.

### III.    INFINITIVE FAILS TO PLEAD A VIABLE CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES AGAINST 11:59 (COUNTERCLAIM II)

Infinitive's Counterclaim Two for Tortious Interference with Business Expectancies, against 11:59, must be dismissed.  Infinitive alleges, in relevant part:

> 66. Infinitive had a reasonable expectation of business relationships with its customers.

> 67. 11:59 was aware of Infinitive's customer relationships and its expectation of further business from those customers.

> 68. 11:59 intentionally sought to destroy Infinitive's relationships with its customers without any legitimate purpose for doing so.

D.E. 86 ¶ 66-68. Counterclaim Two is barred by the Settlement Agreement and by Infinitive's failure to plead the elements of the claim.

### A.  The Settlement Agreement Precludes Counterclaim Two As It Arises Out of the Threatened Claims Upon Which Infinitive Agreed Not to Sue

Counterclaim Two for Tortious Interference is precluded by Infinitive's agreement not to sue 11:59.  Infinitive "covenant[ed] not to sue or otherwise assert any legal claim in any forum against 11:59 for the Threatened Claims." [Moye Decl. **Exhibit 1**].  The "Threatened Claims," are explicitly defined as "tortious interference with Infinitive's contracts and employment relationships." *Id*.  This is the precise basis for Infinitive's Counterclaim Two.  Where "the terms

---

[4] Infinitive cannot also bootstrap 11:59's contacts with Virginia (which may or may not be sufficient minimum contacts for personal jurisdiction) to secure personal jurisdiction over Moye as an individual. *See*, e.g., *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 527 (E.D. Va. 2009) (explaining, "[t]he contacts of each officer or employee must be judged separately from those of the corporation").

of the contract are clear and unambiguous, then we must afford those terms their plain and ordinary meaning." *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000) (citation omitted).

The Settlement Agreement requires that Counterclaim Two be dismissed as barred.

## B. Infinitive Has Not Alleged Sufficient Facts to State a Plausible Claim for Tortious Interference with Business Expectancies

Even if Infinitive had not waived the claim against 11:59, which it has, the tortious interference claim is also substantively deficient. Infinitive fails to claim that 11:59 engaged in legally cognizable "improper methods" in its alleged interference. The required elements for tortious interference with business expectancies are similar yet distinct from those required to establish tortious interference with contractual relations. *Carfax, Inc. v. Red Mountain Techs.*, 119 F. Supp. 3d 404, 416 (E.D. Va. 2015).

To state a claim of tortious interference with business expectancies (or prospective economic advantages) under Virginia law, a plaintiff must allege: (1) the existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that plaintiff would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct; (4) interference by improper methods; and (5) damages resulting from that interference. *See*, *NorthStar Aviation, LLC v. Alberto,* 332 F. Supp. 3d 1007, 1019 (E.D.Va. 2018); see also, *Com. Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 214 (4th Cir. 2001); *Maximus, Inc. v. Lockheed Info. Management Sys. Co.,* 254 Va. 408, 493 (Va. 1997). Infinitive's counterclaim fails on prong four.

Infinitive claims that 11:59 interfered using the following improper methods: (1) having Sheridan solicit Infinitive customers in violation of his contractual obligations; and (2) copying

and replicating Infinitive's work product.  D.E. 86 ¶ 69.  In this case, neither assertion rises to the level of any improper method sufficient to support a tortious interference claim.  *See*, e.g., *Duggin v. Adams*, 234 Va. 221, 227 (1987); *Com. Funding*, 249 F.3d at 214.

It is well-established that "[m]ethods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules."  *Duggin*, 234 Va. at 227.  Improper methods may include: violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, breach of fiduciary duty, violation of established standards of a trade or profession, sharp dealing, overreaching, or unfair competition.  *Com. Funding*, 249 F.3d at 214 (quoting *Duggin*, 234 Va. at 228).  Infinitive has not adequately pled that 11:59 engaged in any of the legally recognized "improper methods."

First, Infinitive cannot base its tortious inference claim on the alleged violation of Sheridan's contractual obligations.  *See*, *N. Ave. Cap., LLC v. Ranger Sci. LLC*, No. 2:23-CV-00015, 2024 WL 2097596, at *2 (S.D.W. Va. May 9, 2024) (barring a tortious interference claim because any liability under the claim would arise from the contract).[5]

Infinitive alleges that its own employee, Michael Sellery, voluntarily disclosed information regarding Infinitive's unnamed client to Sheridan by sending a photo to Sheridan's personal email with information regarding the client.  D.E. 86 ¶¶ 28-29.  Notably, 11:59 has not pled that 11:59, nor anyone on its behalf, improperly requested or sought the information that Sellery provided to Sheridan.  Infinitive also claims that former Infinitive employee, McGinn, retained Infinitive work product after he was terminated by Infinitive, which he used to create a presentation on behalf of 11:59.  D.E. 86 ¶¶ 34-41.  Notably, Infinitive never refers to this "work product" as proprietary or

---

[5] It is worth noting that although Infinitive bases much of its claim on the conduct of Sheridan, it fails to include any cross-claims against him.

confidential, because it was not.  Instead, Infinitive claims McGinn used one slide within Infinitive's non-confidential PowerPoint presentation, and that McGinn asked Sheridan to "rebuild" a second slide.  D.E. 86 ¶ 39.  Neither slide contains confidential information where Infinitive itself disclosed both slides to the public when it placed the slide in its public filing.

In this regard, Infinitive fails to allege the type of "improper use" recognized by the applicable law, because 11:59 is not alleged to have misused confidential or proprietary information, and even assuming the truth of the allegations "rebuild[ing]" a non-proprietary and publicly available PowerPoint cannot constitute improper means.  For this reason, Counterclaim Two cannot survive.

### C. The Settlement Agreement Bars Any Claim of Tortious Interference Against 11:59 With Regard to the Alleged Solicitation of Employees

While Counterclaim Two relates to Infinitive's claims of tortious interference with business expectancies related to 11:59 allegedly interfering with Infinitive's business relationships with its clients (D.E. ¶ 65-71), Infinitive also includes 11:59 in its allegation of a conspiracy involving the solicitation of its employees.  (D E. ¶ 43).  To the extent Infinitive alleges a tortious interference claim related to the solicitation of its employees, such a claim is barred by the Settlement Agreement.  *See, Erdmann v. Preferred Research, Inc. of Georgia*, 856 F.2d 788, 791 (4th Cir. 1988) (noting that under Virginia law, a tort claim normally cannot be maintained in conjunction with a breach of contract claim where the actions did not give rise to an independent tort, in which case the alleged tort was really just "a classical breach of contract claim").  In other words, Infinitive's recourse (if any) is through the Settlement Agreement that it signed and agreed to be bound to rather than tort claims.  *See, CSX Transp., Inc. v. Norfolk Southern Railway Co.*, No. 2:18-cv-530, at *15 (E.D. Va. Sept. 9, 2019) (noting that where a person is a party to a contract

with another and has suffered purely economic losses related to the contract, that person may not receive damages in tort").

## IV. INFINITIVE FAILS TO PLEAD A VIABLE CLAIM FOR CONSPIRACY AGAINST 11:59

### A. Counterclaim Three Fails Due to the Intra-Corporate Immunity Doctrine

"The elements of a statutory conspiracy claim under § 18.2-499(i) are: (1) concerted action (2) legal malice; and (3) causally-related injury." *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 144 F.Supp.2d 558, 601 (W.D. Va. 2001) (internal citations omitted). "A plaintiff must prove that a defendant acted intentionally, purposefully, and without legal justification." *Jaggars v. Sandy Spring Bank*, No. 6:14-cv-00015, 2014 WL 2882003 at *3 (W.D. Va. June 25, 2014) (internal citations omitted); *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014) ("a plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification'") (citation omitted).

Infinitive failed to allege all the elements of the statutory conspiracy claim. First, it failed to allege a combination of two or more persons. *See*, VA Code § 18.2-499. "[U]nder the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation*." ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (citation omitted); *see, Lewin v. Cooke,* 95 F.Supp.2d 513, 524 (E.D.Va.2000) (explaining that "because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy")*; see also, Glob. Bankcard Servs., Inc. v. Glob. Merch. Servs., Inc.*, No. 1:11-CV-00110 IDD, 2011 WL 2268057, at *8 (E.D. Va. June 7, 2011) (dismissing claim under Va. Code § 18.2-499, 500, based on the intra-corporate immunity doctrine). Here, Infinitive alleges only that the conspirators were 11:59, and its employees, Ms. Moye, Mr.

McGinn, Ms. Hair, Mr. Sheridan.  [D.E. 86 ¶73].  11:59 cannot conspire with itself, and thus the Court must dismiss the Third Counterclaim.

### B.  Infinitive Still Fails to Plead a Claim for Conspiracy

Even if the intra-corporate immunity doctrine does not apply, however, the statutory conspiracy claim must be dismissed if the tortious interference claim is dismissed.  *See*, e.g., *Cox v. MAG Mut. Ins. Co.*, No. 3:14-CV-377-JAG, 2015 WL 1640513, at *6 (E.D. Va. Apr. 9, 2015) (dismissing conspiracy claim, explaining, "where a plaintiff has no actionable claim for the underlying alleged wrong, an action for conspiracy based on that wrong cannot lie") (citations omitted).[6]

Moreover, even if Moye could conspire with her own employer, which she cannot, Infinitive has not alleged such conspiracy.  It alleges the conclusory statement of concerted action "for the purpose of willfully and maliciously injuring Infinitive's business interests." [D.E. 86 ¶ 73].  However, under any interpretation of the Settlement Agreement, Infinitive cannot sue 11:59 for solicitation of Infinitive's employees, and Infinitive has not alleged that Moye engaged in any other action towards injuring Infinitive's business interests.  Thus, there is no allegation that Moye conspired with anyone and must be dismissed from Counterclaim Three.

When, as here, the elements are not adequately pled, the court should dismiss on the pleadings.  *See*, e.g., *Jaggars v. Sandy Spring Bank*, No. 6:14-CV-00015, 2014 WL 2882003, at *4 (W.D. Va. June 25, 2014); *Apex Advanced Tech. LLC v. RMSI Priv. Ltd.*, No. 1:21-cv-1400 RDA-

---

[6] Infinitive bases the legal malice prong of the conspiracy claim on Sheridan's alleged breach of his "nonsolicitation covenants that prevented them from directly or indirectly interfering with Infinitive's customer relationships."  D.E. 86 ¶ 18.  However, breach of contract cannot be a basis for the conspiracy claim. *Dunlap v. Cottman Transmission Systems, LLC,* 754 S.E.2d 313, 317 (Va. 2014)).  Specifically, a breach of contract claim does not "rise to the level of an 'unlawful act' under Va. Code § 18.2–500. *Id.* at 217.

WEF, 2022 WL 4826335, at *6 (E.D. Va. Sept. 30, 2022) (dismissing claims under Va. Code § 18.2-499 and common law conspiracy based on the intra-corporate immunity doctrine).

## V.    MOYE WAS IMPROPERLY JOINED TO THIS MATTER

Moye is not a plaintiff in this action.  Infinitive moved pursuant to Fed. R. Civ. P. 15(a) for leave to Amend its Answer and Affirmative Defenses to include an additional defense and Counterclaims, but did not move to add a Third-Party Defendant pursuant to Fed. R. Civ. P. 14(a). D.E. 77 (the "Motion to Amend").  Moye, not being a party, did not appear to oppose the amendment, which was granted by the Court.  *See*, D.E. 80, 84. Moye is not a proper counterclaimant nor Third-Party Defendant, and should not have been joined in this action.

As such, Moye is an improper party to this matter and must be dismissed.

## CONCLUSION

Based on the foregoing, 11:59 respectfully requests that the Court grant its Motion to Dismiss Infinitive's Counterclaims, with prejudice, in their entirety.

Respectfully submitted,

**POTTER & MURDOCK**
*Attorneys for Plaintiff M Corp dba 11:59*


By:  _/s/ John M. Murdock_____
  John M. Murdock, Esq.
  Brian S. Szmak, Esq.
  252 N. Washington Street
  Falls Church, VA  22046
  jmurdock@pottermurdock.com
  bszmak@pottermurdock.com
  Telephone:  (703) 992-6950

**NUKK-FREEMAN & CERRA, P.C.**
*Attorneys for Plaintiff M Corp dba 11:59*


By: _____
  Kegan S. Andeskie, Esq.
  Stacy Landau, Esq.

26 Main Street, Suite 202
Chatham, NJ, 07928
kandeskie@nfclegal.com
slandau@nfclegal.com
Tel.: (973) 665-9100
Fax: (973) 665-9101

Dated: June 27, 2025

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on this 27th day of June 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record. I also caused a copy of the foregoing to be served upon the following by electronic mail:

| | |
|---|---|
| Micah E. Ticatch, Esq.<br>John W.H. Harding, Esq.<br>ISLER DARE, P.C.<br>1945 Old Gallows Road. Suite 650<br>Vienna, Virginia 22182<br>mticatch@islerdare.com<br>jharding@islerdare.com<br>*Attorneys for Defendant Infinitive, Inc.* | John M. Remy, Esq.<br>Eric P. Burns, Esq.<br>Kenneth Bledsoe, Esq.<br>JACKSON LEWIS, P.C.<br>10701 Parkridge Blvd., Suite 300<br>Reston, VA  20191<br>John.Remy@jacksonlewis.com<br>Eric.Burns@jacksonlewis.com<br>Kenneth.Bledsoe@jacksonlewis.com<br>*Attorneys for Defendant Joseph Bradley Sheridan* |
| Daniel McCoy, Esq.<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA  94041<br>dmccoy@fenwick.com<br>*Attorneys for Defendant Databricks Inc.* | Reanne Swafford-Harris, Esq.<br>FENWICK & WEST LLP<br>730 Arizona Avenue, 1st Floor<br>Santa Monica, CA  90401<br>rswaffordharris@fenwick.com<br>*Attorneys for Defendant Databricks Inc.* |
| Robert R. Vieth, Esq.<br>Stacey Rose Harris, Esq.<br>HIRSCHLER FLEISCHER, PC<br>1676 International Dr., Suite 1350<br>Tysons Corner, Virginia 22102<br>rvieth@hirschlerlaw.com<br>sharris@hirschlerlaw.com<br>*Attorneys for Defendant Databricks Inc.* | |

DATED:  June 27, 2025

Respectfully submitted,

**POTTER & MURDOCK**
*Attorneys for Plaintiff/Counter-Defendant M Corp dba 11:59 and Counter-Defendant Alison Moye*

By:   /s/ John M. Murdock
     John M. Murdock, Esq.