UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| M CORP DBA 11:59, | : | |
| | : | Civil Action: 1:24-cv-1823 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INFINITIVE, INC., JOSEPH BRADLEY SHERIDAN, DATABRICKS INC., WILLIAM McKINNEY, CHERYL MILES, AND DOES 1-25, INCLUSIVE. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| INFINITIVE, INC., | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| M CORP DBA 11:59 AND ALISON MOYE. | : | |
| | : | |
| Counterclaim Defendants. | : | |

## DECLARATION OF ALISON MOYE

I, Allison Moye, do hereby declare as follows:

1. I am over the age of eighteen and am competent to give testimony contained in this Declaration.

2. I submit this Declaration in connection with Counter-Defendants M Corp dba 11:59 ("11:59") and Alison Moye ("Moye") (collectively "Counter-Defendants") Motion to Dismiss Counter-Plaintiff Infinitive's ("Infinitive" or "Counter-Plaintiff") Counterclaims.

3. Since in or around June 2021, I have resided permanently in New Jersey.

4. I joined 11:59 in or about March 2023 as the Chief Transformation Officer ("CTO").

5. I currently serve as 11:59's Chief Operating Officer.

6. The Settlement Agreement between 11:59 and Infinitive, dated August 14, 2023, is annexed hereto as **Exhibit 1.**

7. I was 11:59's CTO at the time the Settlement Agreement was executed.

8. I understood that by the Settlement Agreement, Infinitive waived its ability to bring suit against me regarding an alleged violation of my Infinitive Employment Agreement.

9. Prior to my employment at 11:59, I was employed by Infinitive. A copy of my Employment Agreement with Infinitive is attached hereto as **Exhibit 2.**

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Alison Moye*
_____
Alison Moye

Dated: 06/26/2025

# EXHIBIT A

## **SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is made by and between Infinitive, Inc. ("Infinitive") and M Corp, doing business as 11:59 ("11:59"). Infinitive and 11:59 are collectively referred to herein as the "Parties" or individually as a "Party."

WHEREAS, Infinitive's employee generally agree to refrain from soliciting other Infinitive employees, during the time of their employment and for 1 year after the employment relationship terminates (the "Employee Non-Solicitation Covenant"); and

WHEREAS, on March 23, 2023 and March 30, 2023, respectively, former employees Joseph Brad Sheridan and Alison Moye terminated their employment with Infinitive and accepted employment with 11:59; and that following Mr. Sheridan's and Ms. Moye's hire by 11:59, nine other employees terminated their employment with Infinitive to take positions with 11:59 (the "Former Employees"); and

WHEREAS, Infinitive has alleged that the Former Employees were recruited to 11:59 in violation of Mr. Sheridan and Ms. Moye's Non-Solicitation Covenants; and

WHEREAS, Infinitive has threatened to bring claims against 11:59 for tortious interference with Infinitive's contracts and employment relationships (the "Threatened Claims"); and

WHEREAS, 11:59 denies any and all of the Threatened Claims; and

WHEREAS, the Parties desire to resolve the Threatened Claims without need to resort to legal action;

NOW THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Restrictive Covenant**. Until the expiration of Ms. Moye's Nonsolicitation Covenant (on March 30, 2024), 11:59 agrees not to: (i) solicit or induce, or attempt to solicit or induce, any Infinitive employee to sever his or her employment with Infinitive for a position of employment outside of Infinitive; or (ii) hire, or attempt to hire, any Infinitive employee. For avoidance of doubt, nothing in this Agreement shall restrict 11:59's ability to hire an Infinitive employee who was involuntarily terminated by Infinitive.

2. **Covenant Not to Sue.** In reliance on the Restrictive Covenant outlined in Paragraph 1 of this Agreement, Infinitive covenants not to sue or otherwise assert any legal claim in any forum against 11:59 for the Threatened Claims, *provided that* this Covenant Not to Sue shall have no effect to the extent 11:59 breaches the Restrictive Covenant outlined in Paragraph 1 of this Agreement.

3. **Entire Agreement**. This Agreement constitutes and contains the entire agreement and understanding concerning the Threatened Claims. Any amendment or modification to this Agreement must be made in writing and signed by duly appointed representatives of both Parties. The drafting of this Agreement shall be deemed a mutual endeavor by all Parties, and shall not be construed against any single Party as the drafter.

4. **Governing Law and Forum.** This Agreement shall be construed, interpreted, and governed in accordance with the laws of the Commonwealth of Virginia, without regard to its conflicts of law principles. Any dispute arising under or in connection with this Agreement shall be subject to the

2

exclusive jurisdiction of the state and/or federal courts in Virginia.  The Parties waive any objection to forum or jurisdiction in said courts.

INFNITIVE, INC.                                             M CORP (D/B/A 11:59)

By: *Michelle Rostom*                                        By: *Thomas B—*
Date                                                         Date:   August 14, 2023
Title:   Head of People Operations                           Title:  President & Chief Operating Officer

# EXHIBIT B

DocuSign Envelope ID: 92316ECB-5B85-4670-99DF-43C277C1485C



## EMPLOYEE INNOVATIONS AND PROPRIETARY RIGHTS AGREEMENT

In return for my new or continued employment with Infinitive ("Company"), recognizing that my employment or continued employment with Company is contingent upon my execution of this document, and for other good and valuable consideration, the receipt and sufficiency of which I (the "Employee") hereby acknowledge, I acknowledge and agree that:

1. <u>Best Efforts; No Conflict of Interest</u>. During my employment with Company, I will devote my best efforts to the interests of Company and will not engage in other employment or in any activities determined by Company to be detrimental to the best interests of Company without the prior written consent of Company. I also agree to not engage in any work, paid or unpaid, that creates a conflict of interest with Company. If Company believes a conflict exists, Company may ask me to choose to discontinue the other work or resign my employment with Company. In addition, I agree that, during my employment with Company, I will not refer any client or potential client of Company to competitors of Company, without obtaining Company's prior written consent.

2. <u>Proprietary Information</u>. My employment creates a relationship of confidence and trust between Company and me with respect to any information:

   (a) Applicable to the business of Company; or
   (b) Applicable to the business of any Client, which may be made known to me by Company or by any Client or Partner of Company, or learned by me in such context during the period of his or her employment.

All such information has commercial value in the business in which Company is engaged and is hereinafter called "Proprietary Information." By way of illustration, without limitation, Proprietary Information includes any and all technical and non-technical information including Innovations (defined herein) related to the current, future and proposed Services and Products of Company, and includes, without limitation, respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing manufacturing, client lists, business forecasts, sales and merchandising and marketing plans and information. "Proprietary Information" also includes proprietary or confidential information of any third party, including Company's clients, who may disclose such information to Company or to Employee in the course of Company's business, including but not limited to client's customer lists, client price lists, or other client financial data. "Proprietary Information" does not, however, include information which is published, or publicly known to anyone familiar with the relevant industry, practice, technology or market by proper means, or which is known to persons not under any legal or contractual obligation to preserve its confidentiality who have not obtained it by improper or unlawful means, nor does it include information which has been disclosed by proper means by Company, current / past employees or Company's client(s) publicly, or privately without restriction on further dissemination or disclosure. In cases where any question exists as to the appropriateness of disclosing information, I agree to obtain the prior written consent of Company prior to disclosure.

3. <u>Ownership and Nondisclosure of Proprietary Information</u>. All Proprietary Information is the sole property of the Company, Company's assigns, and Company's clients. Company's assigns and Company's clients shall be the sole and exclusive owner of all Innovations derived from or embodied in the Proprietary Information. At all times, both during my employment by Company and after termination of such employment, I will keep in confidence and trust all Proprietary Information, including all Proprietary Information pertaining to Company's clients, and I will not use or disclose any Proprietary Information or anything directly relating to Proprietary Information without the written consent of Company, except as may be necessary in the ordinary course of performing my duties as an employee of Company.

4. <u>Innovations</u>. As used in this Agreement, the term "Innovations" means all processes, machines, manufactures, compositions of matter, improvements, inventions, techniques, sketches, drawings, models, processes, algorithms, software programs, works of authorship, information fixed in any tangible medium of expression, moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protectable under patent laws, copyright laws or trade secret laws), and all other subject matter protectable under patent, copyright, moral right, mask work, trademark, trade secret or other laws, and includes without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, discoveries, artwork, software, and designs, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice and which (a) relate at the time of conception or reduction to practice to Company's business, or actual or demonstrably anticipated research or development of Company; (b) result from any work that I performed for Company or from any Proprietary Information; or (c) are developed on any amount of the Company's time or cost or results from the use of premises or property (including computer systems and engineering facilities) owned, leased or contracted for by the Company, in each case whether or not reduced to or embodied in writing, electronic media or tangible form.

5. <u>Disclosure of Prior Innovations</u>. I have identified on Exhibit A ("Prior Innovations") attached hereto all inventions, applicable to the business of Company or relating in any way to Company's business or demonstrably anticipated research and development or business, which were conceived, reduced to practice, created, derived, developed, or made by me prior to and independently of my employment with Company (collectively, the "Prior Innovations"), and I represent that such list is as complete a description of such Prior Innovations as space allows or their nature makes practicable under the circumstances, and the attached descriptions shall be viewed and construed so as to embrace fully these Prior Innovations created by me prior to inception of my Employment with Company, and all pre-existing forms of such Innovations which might fairly be said to be embraced by such description(s). I represent that I have no rights in any inventions, other than the Prior Innovations listed on Exhibit A. If nothing is identified on Exhibit A, I represent that I have made no Prior Innovation as of the time of signing this Agreement. If in the course of my employment with the Company I incorporate into an Innovation or any product, process or service of the Company any Prior Innovation, I hereby grant to the Company, to the full extent of my rights in and to the same, a royalty-free, irrevocable, worldwide, nonexclusive, perpetual, fully paid-up license (with the right to sublicense) to make, have made, copy, make derivative works of, use, offer to sell, sell, import, and otherwise distribute such product, process or service without restriction.

6. <u>Assignment</u>. Effective as of my first date of employment with the Company and during such time that I have been or am employed by the Company, all Innovations and Proprietary Information now known or hereinafter conceived, reduced to practice, created, derived, designed, developed, or made by me, alone or jointly with others, including any

improvements thereto, whether or not during normal business hours or on Company premises shall be and are the property of the Company. I agree to assign, convey and transfer and do hereby irrevocably and perpetually assign, convey and transfer to the Company all my rights, title and interest that I have or may in the future acquire to such Innovations and Proprietary Information. I agree to promptly disclose to the Company all Innovations covered by this Agreement.

7. <u>Exception to Assignment</u>.  Subject to the requirements of applicable state law, if any, I understand that Innovations will not include, and the provisions of this Agreement requiring assignment of Innovations to the Company do not apply to, any invention which qualifies fully for exclusion under the provisions of applicable state law, if any. In order to assist in the determination of which inventions qualify for such exclusion, I will advise the Company promptly in writing, during and after the term of my employment with the Company, of all innovations that relate to the Company's actual or anticipated business solely or jointly conceived or developed or reduced to practice by me during my employment with the Company.

8. <u>Cooperation in Perfecting Rights to Proprietary Information and Innovations</u>.
I agree to perform, during and after my employment, all acts deemed necessary or desirable by Company to permit and assist Company, at Company's expense, in obtaining, defending, conveying and enforcing the full benefits, enjoyment, rights and title throughout the world in the Proprietary Information and Innovations assigned or licensed to, or whose rights are irrevocably waived and shall not be asserted against, Company under this Agreement. Such acts may include, but are not limited to, execution of documents and assistance or cooperation (i) in the filing, prosecution, registration, and memorialization of assignment of any applicable patents, copyrights, mask work, or other applications, (ii) in the enforcement of any applicable patents, copyrights, mask work, moral rights, trade secrets, or other proprietary rights, and (iii) in other legal proceedings related to the Proprietary Information or Innovations. I irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to execute documents or take any lawfully permitted action to evidence, perfect, obtain, protect, defend, convey and enforce the rights of the Company in the Proprietary Information and Innovations that I am unable or unwilling to perform. Further, to the extent any of the rights, title and interest in and to the Proprietary Information and Innovations can neither be assigned nor licensed by me to the Company, I hereby irrevocably waive and agree never to assert such non-assignable and non-licensable right, title and interest against the Company or any of the Company's successors in interest.

9. <u>Return of Company Property</u>. I acknowledge that all materials (including, without limitation, documents, drawings, models, apparatus, sketches, designs, lists, and all other tangible media of expression) furnished to me by Company shall remain the property of Company. On termination of my employment with Company for whatever reason, or at the request of Company before termination, I agree to promptly deliver to Company all records, files, computer disks, memoranda, documents, lists, materials and other information regarding or containing any confidential or Proprietary Information, including all copies, reproductions, summaries or excerpts thereof, then in my possession or control, whether prepared by me or others. I also agree to promptly return, upon termination or at any time upon Company's request, any and all Company property issued to me, including but not limited to computers, facsimile transmission equipment, cellular phones, keys and credits cards. I further agree that should I discover any Company property or Proprietary Information in my possession after my termination and departure from Company, I agree to return it promptly to Company without retaining copies or excerpts of any kind.

DocuSign Envelope ID: 92316ECB-5B85-4670-99DF-43C277C1485C

10. <u>Non-solicitation and Non-competition</u>. I understand that the Company invests significant resources in the training and development of its employees and that I will have access to the Company's confidential and proprietary information. I further understand that the Company is a business entity formed to provide services to clients on strategic and tactical projects and on their day-to-day operations, utilizing skills in project management, process engineering, organizational change management, and business analysis, in the fields of digital marketing and advertising, customer data analytics, and business transformation ("Services and Products"). In light of these understandings, I agree to the following obligations which are reasonably designed to protect the Company's legitimate business interests without unreasonably restricting my ability to seek or obtain employment after my employment with the Company terminates for any reason.

For the purpose of this Agreement, "Client" means any entity for which I was involved in the development, creation, design, marketing or sales of a Service or Product, or about whom I received Proprietary Information, within the twelve-month period immediately preceding my separation date. "Prospect" means any entity that is not a Client but with respect to whom, within the twelve-month period immediately preceding my separation date, I conducted, prepared, or submitted any proposal, client development work product, or marketing efforts on behalf of the Company with respect to a competitive Service or Product, or about whom I received Proprietary Information. "Partner" means any entity with whom Company has a contractual relationship to provide Services or Products to a Client.

10.1 <u>Non-solicitation of Clients or Prospects</u>. During the term of this Agreement and for a period of twelve (12) months after my employment ends for any reason, or from the date of entry by a court of competent jurisdiction of a final judgment enforcing this Agreement (whichever is later), I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage the Company's relationship with any of its existing Clients or Prospects by soliciting, or encouraging others to solicit, any of them for the purpose of diverting business from the Company.

10.2 <u>Non-solicitation of Company's Employees</u>. During the term of this Agreement and for a period of twelve (12) months after my employment ends for any reason, or from the date of entry by a court of competent jurisdiction of a final judgment enforcing this Agreement (whichever is later), I will not, either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage the Company's business by hiring, soliciting, inducing, encouraging or attempting to hire any of the Company's employees or causing others to hire, solicit, induce or encourage any of the Company's employees to discontinue their employment with Company or to seek or accept any employment with any other business entity that performs competitive Services or Products.

10.3 <u>Covenant Not to Compete</u>. I acknowledge that the Company has invested and will in the future invest significant time, effort, and money in my development as an employee of the Company. I further acknowledge that, in connection with my position with the Company, I will be introduced to and interact closely with Clients. In the event that any such Client were to seek to hire me to work directly for them (as either an employee, consultant, or contractor), I recognize and acknowledge that the Company would suffer significant financial losses as a result of the loss of my services, and the Company would be required to expend additional financial resources (as well as substantial time and effort) to find a replacement for me and to train my replacement. In

DocuSign Envelope ID: 92316ECB-5B85-4670-99DF-43C277C1485C

recognition of (a) the cost and expense the Company would incur under such circumstances to replace me, and (b) the financial loss the Company would incur as a result of the business the Company would lose as a result of my acceptance of an employee or consultant or contractor relationship with a Client or any other business entity that performs competitive Services and Products, I hereby agree that, during my employment and for a period of twelve (12) months after the termination of my employment for any reason, I will not, directly or indirectly, accept a position as an employee, consultant, or contractor to any Client or Partner in any role in which I will perform the services I previously performed for the Client or Partner.

11.   Client Transition Fee. I acknowledge that the recruitment fee in the Company's industry is twenty-five percent of an employee's or contractor's salary. In the event that, within twelve (12) months after the termination of my employment with the Company for any reason, I accept employment with a Client in a role that is not prohibited by Section 10.3, I will pay the Company a transition fee in an amount equal to twenty-five percent (25%) of the greater of (1) the salary I earned in my employment with the Company as of my last day of employment, or (2) the salary I will earn in my new employment with the Client. I recognize that this amount will be reasonable under the circumstances and will only partially reimburse the Company for the income it will lose as a result of my employment/engagement by a Client, and the costs the Company will incur to replace me and train my replacement.

In the event that, within twelve (12) months after the termination of my employment with the Company for any reason, I accept employment with a Company Client as a contractor, consultant or any other working relationship that is not prohibited by paragraph 10.3 above, and with whom I worked in the twelve (12) months prior to my termination, I will pay the company a recruitment fee in an amount equal to twenty-five percent (25%) of the greater of (1) the salary I earned in my employment with the Company as of my last day of employment, or (2) my annualized hourly rate as a contractor (defined as my hourly rate for the services I performed for the Client as a contractor multiplied by two-thousand-eighty (2,080) hours per year). I recognize that this amount will be reasonable under the circumstances and will only partially reimburse the Company for the income it will lose as a result of my employment/engagement by a Client, and the costs the Company will incur to replace me and train my replacement.

14.   No Violation of Rights of Third Parties. I warrant that my performance of all the terms of this Agreement and my employment with Company does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior to my employment with Company. I agree not to disclose to Company, or induce Company to use, any confidential or proprietary information or material belonging to any previous employers or others. I warrant that I am not a party to any other agreement that will interfere with my full compliance with this Agreement or any other agreement that I may have with Company. I further agree not to enter into any agreement, whether written or oral, in conflict with the provisions of this Agreement or any other agreement that I may have with Company.

15.   Survival. This Agreement: (a) shall survive my employment by Company; (b) does not in any way restrict my right or the right of Company to terminate my employment at any time, for any reason or for no reason; (c) inures to the benefit of successors and assigns of Company; and (d) is binding upon my heirs and legal representatives.

16.   Injunctive Relief. A breach of any of the promises or agreements contained herein will result in irreparable and continuing damage to Company for which there will be no adequate remedy at law, and Company shall be entitled to injunctive relief and/or a decree for

DocuSign Envelope ID: 92316ECB-5B85-4670-99DF-43C277C1485C

specific performance, and such other relief as may be proper (including monetary damages if appropriate).

17. <u>Notices</u>. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal delivery, when delivered personally; (b) by overnight courier, upon written verification of receipt; (c) by telecopy or facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt. Notices to me shall be sent to any address in Company's records or such other address as I may specify in writing. I acknowledge that I am responsible for keeping Company records updated on my current mailing address by notifying the Human Resources Department of any changes in my mailing address. Notices to Company shall be sent to Company's Human Resources Department or to such other address as Company may specify in writing.

18. <u>Governing Law</u>. This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the Commonwealth of Virginia. Each of the parties irrevocably consents to the exclusive jurisdiction of the federal and state courts located in Virginia, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in Virginia, such jurisdiction shall be nonexclusive.

19. <u>Severability</u>. If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

20. <u>Waiver; Amendment: Modification</u>. The waiver by Company of a term or provision of this Agreement, or of a breach of any provision of this Agreement by me, shall not be effective unless such waiver is in writing signed by Company. No waiver by Company of, or consent by Company to, a breach by me, will constitute a waiver of, consent to or excuse of any other or subsequent breach by me. This Agreement may be amended or modified only with the written consent of both me and Company. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

21. <u>Entire Agreement</u>. This Agreement represents my entire understanding with Company with respect to the subject matter of this Agreement and supersedes all previous understandings, written or oral.

I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with such provisions. I have executed this Agreement on the date shown below, which shall be the effective date of this Agreement.

Company:

By: _____

Denis J. McFarlane, CEO

Address: 20365 Exchange Street, Suite 301

Ashburn, VA 20147

Dated: _____January 14, 2019_____

Employee:

By: _____Alison B Moye_____
        DocuSigned by:
        A8CB90C669F645F...

Printed Name: Alison B Moye

Address: 21228 Walkley Hill Place

Ashburn, VA 20148

Dated: 4/2/2019

## Exhibit A

PRIOR INNOVATIONS