IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **M CORP DBA 11:59,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-1823 |
| | ) |
| **INFINITIVE, INC.,** *et al.* | ) |
| | ) |
| *Defendants.* | ) |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**

Micah E. Ticatch, Va. Bar No. 83351
John W. H. Harding, Va. Bar No. 87602
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
mticatch@islerdare.com
jharding@islerdare.com
*Counsel for Infinitive, Inc.*

# **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I.  Infinitive Has Stated a Claim for Breach of Contract Against Ms. Moye. ............................ 4

    A.  Infinitive did not covenant to refrain from initiating suit against Ms. Moye. ................ 4

    B.  Infinitive has adequately pled that Ms. Moye breached her nonsolicitation covenant. .................................................................................................................... 7

II. Infinitive Has Properly Pled a Claim for Tortious Interference with its Business Expectancies Against 11:59. ............................................................................................. 8

    A.  Counterclaim II is not precluded by the Settlement Agreement. ................................. 8

    B.  Infinitive properly pled improper methods. .................................................................. 9

III. Infinitive has Stated a Claim for Statutory Conspiracy Against Counter-Defendants. ......... 11

    A.  The conspiracy claim is not subject to dismissal based on the intracorporate immunity doctrine. .................................................................................................... 11

    B.  Infinitive has pled sufficient wrongful conduct to establish a statutory conspiracy. ................................................................................................................. 13

    C.  The Court has personal jurisdiction over Ms. Moye for the conspiracy claim. ............ 13

IV. Ms. Moye's Argument That She Was "Improperly Joined" Is Baseless. ............................ 14

CONCLUSION ...................................................................................................................... 16

For the reasons explained below, Counter-Defendants' Motion to Dismiss (Dkt. 106) should be denied.

## BACKGROUND

Infinitive is a data and AI consulting firm. (Dkt. 86 at 69, ¶ 2.) To protect its business and talent, Infinitive requires high-level employees to sign employment agreements that contain restrictive covenants prohibiting: (i) the solicitation or interference with Infinitive's clients, and (ii) the solicitation or hiring of Infinitive's employees. Additionally, Infinitive's employment agreements require employees to return confidential or proprietary information immediately upon the end of their employment relationship with Infinitive. (*Id.* at 70-73 ¶¶ 11-13.)

In the first quarter of 2023, 11:59 hired four former Infinitive employees: Jim McGinn (Chief Technology Officer), Crystal Hair (Vice President), Alison Moye (Chief Transportation Officer), and Joseph Bradley Sheridan (Vice President). (*Id.* at 72, ¶¶ 14-17.) 11:59 is in the same industry and competes with Infinitive for business. (*Id.* at 69, ¶ 3.) At the time of their hire, Ms. Moye and Mr. Sheridan's non-solicitation covenants with Infinitive were in effect and continuing until March 2024. (*Id.*)

Despite 11:59's awareness of Ms. Moye and Mr. Sheridan's obligations, Mr. McGinn, Ms. Hair, Ms. Moye, Mr. Sheridan, and others conspired to injure Infinitive's business and (i) steal Infinitive's customers and prospective customers in violation of post-employment restrictions; (ii) retain, copy, and use Infinitive's work product for the benefit of 11:59; (iii) encourage the breach of an Infinitive employee's duty of loyalty to Infinitive; and (iv) raid Infinitive of its employees in violation of post-employment covenants. (*See* Dkt. 86 at 69-86.)

As part of the conspiracy, Ms. Moye, in breach of her contract with Infinitive, directly solicited her sister away from Infinitive and caused her to be hired by 11:59. (*Id.* at 79, ¶ 44.) Ms. Moye also encouraged others to solicit and hire Infinitive employees on her behalf while

encouraging them to maintain "plausible deniability" regarding her role in the solicitations. (*Id.* at 80, ¶ 49.)

In 2023, Infinitive grew suspicious that 11:59 was encouraging Ms. Moye and Mr. Sheridan to solicit and hire Infinitive employees in violation of their respective employee non-solicitation covenants. Infinitive threatened 11:59 with the possibility of claims against it for tortious interference with those covenants. In response, 11:59's counsel provided assurances that its employees were honoring all of their post-employment obligations. Based upon that inaccurate representation, Infinitive agreed to a limited settlement with 11:59. (Dkt. 107-1 at 4-5 of 14.) Under the settlement agreement, 11:59 agreed to refrain from hiring any further Infinitive employees before March 2024, and in exchange, Infinitive agreed not to sue 11:59 on the threatened claim for tortious interference with Mr. Sheridan's and Ms. Moye's employee non-solicitation covenants. (*See id.*) At the time of the settlement agreement, Infinitive was completely unaware of the wide-ranging conspiracy to injure Infinitive or the fact that 11:59 was interfering with Infinitive's clients or using Infinitive's work product.

Importantly, under the settlement agreement, Infinitive did not provide any kind of release to 11:59; it simply agreed not to initiate a legal action against 11:59 for the threatened claims. The agreement certainly did not release 11:59 from *unknown* claims or say anything about Infinitive's potential claims against Ms. Moye.

In the instant litigation, the Court ordered a forensic review of Mr. Sheridan's text messages and email correspondence in this case. In the course of that review, Infinitive learned about the conspiracy described above. Infinitive promptly moved for, and received, leave to file its Counterclaims against Ms. Moye. (*See* Dkts. 77, 78, 84.)

3

In its pleading, Infinitive has stated: a claim against Ms. Moye for breach of her post-employment covenants (Counterclaim I); a claim against 11:59 for tortious interference with Infinitive's business expectancies (Counterclaim II); and a claim of statutory conspiracy against both Counter-Defendants (Counterclaim III). Counter-Defendants have moved to dismiss each of those claims. For the reasons explained below, that motion should be denied in its entirety.

## ARGUMENT

### I. Infinitive Has Stated a Claim for Breach of Contract Against Ms. Moye.

In its Memorandum, Ms. Moye argues that the claim in Counterclaim I for breach of her non-solicitation covenant should be dismissed because (i) the claim is allegedly barred by the Settlement Agreement between 11:59 and Infinitive; and (ii) the Counterclaim fails to allege sufficient facts to state a claim. (Dkt. 107 at 11-14.) As explained below, neither argument has any merit.

#### A. Infinitive did not covenant to refrain from initiating suit against Ms. Moye.

Ms. Moye's primary argument for dismissal of Counterclaim I is a claim that Infinitive somehow agreed not to initiate the breach of contract claim against her in the Settlement Agreement it entered into with 11:59. The problem with Ms. Moye's argument is it is entirely contrary to the actual language in the Agreement.

"The Supreme Court of Virginia has noted that the guiding light of contract interpretation under Virginia law is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Osman v. Youngs Healthcare, Inc.*, 2023 WL 2021703, at *6 (E.D. Va. 2023) (Alston, J.) (cleaned up).

The Settlement Agreement was between Infinitive and 11:59. (Dkt. 107-1 at 4 of 14.) In that agreement, Infinitive agreed to a narrow Covenant Not to Sue which stated:

4

> Infinitive covenants not to sue or otherwise assert any legal claim in any forum <u>against 11:59</u> for the <u>Threatened Claims</u>

(*Id.*, ¶ 2 (emphasis added).)

By the clear language, Infinitive only covenanted not sue <u>11:59</u> and only as to the <u>Threatened Claims</u>. The Agreement defined "Threatened Claims" as "<u>claims against 11:59</u> for tortious interference with Infinitive's contracts and employment relationships." (*Id.* (emphasis added).) Thus, it is crystal clear exactly what the parties to the Settlement Agreement intended— that Infinitive would not initiate a claim against 11:59 for its intentional interference with Infinitive's employment contracts. Despite the clear language, Ms. Moye somehow argues that the covenant was one not to sue *Ms. Moye* for a claim of *Breach of Contract*. Because that suggestion is entirely contrary to the clear language of the covenant, it is without merit.

Similarly, Ms. Moye argues that by entering the Settlement Agreement, "Infinitive waived the Employment Agreement." (Dkt. 107 at 12.) This is equally without merit. Under Virginia law, "a waiver must be express, or, if it is to be implied, it must be established by clear and convincing evidence." *Pysell v. Keck*, 263 Va. 457, 460 (2002). There is clearly no express waiver in the Settlement Agreement of the Employment Agreement, nor is there any language that would come close to the "clear and convincing" evidence needed to demonstrate that Infinitive impliedly intended to waive the Employment Agreement. To state the obvious, the mere fact that a potential plaintiff settles with a third party accused of *inducing* a breach of contract does not imply the plaintiff intended to waive its claims against the actual breaching party. Ms. Moye's waiver argument is without basis.

Next, Ms. Moye argues that she "is a third-party beneficiary of the Settlement Agreement." (Dkt. 107 at 12.) This argument also fails. To begin with, "a putative third-party beneficiary must demonstrate that the contracting parties clearly and definitely intended the contract to confer a

5

benefit upon him." *Bank of Am. v. Musselman*, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003) (cleaned up) (quoting *Ward v. Ernst & Young*, 246 Va. 317, 435 S.E.2d 628, 631 (1993)). Moreover, a party who only "incidentally benefits from a contract does not qualify as an intended beneficiary under Virginia law." *Osman*, 2023 WL 2021703 at *6. For the reasons already explained, Ms. Moye is not a beneficiary at all of the Settlement Agreement, as it has nothing to say about claims made against her.[1] Consequently, this argument should also be discarded.

Lastly, Ms. Moye argues that the principle of "equitable estoppel" somehow requires dismissal of Counterclaim I. (Dkt. 107 at 13.) In making this argument, Ms. Moye cites cases under the Federal Arbitration Act, which have allowed non-signatories to arbitration agreements to enforce those agreements against signatories. (*See id.* (citing *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) and *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006).) It remains unclear how those cases have anything to do with the instant matter. This is not an arbitration case under federal law. Furthermore, the quotations cited in her Memorandum, such as *Wachovia's* "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage," refer to the situation when a party attempts to enforce rights under a contract against a non-signatory and then attempts to avoid the arbitration that was agreed to in that same contract. *See, e.g.,* 445 F.3d at 769-770. But, Infinitive is not seeking to enforce the Settlement Agreement. Most importantly, even when it applies, equitable estoppel does not grant the Court power to rewrite a contract— it only gives a non-signatory the power to enforce the arbitration clause as written. As explained above, the

---

[1] Furthermore, even if she could establish herself as a third-party beneficiary, it would only allow her to enforce the agreement. But, as noted, the Settlement Agreement does not preclude the breach of contract claim in Count I, making the whole third-party argument irrelevant.

Settlement Agreement does not preclude the breach of contract claim in Counterclaim I, making any discussion of equitable estoppel entirely beside the point.

In sum, each of the various arguments Ms. Moye makes that the Settlement Agreement precludes Counterclaim I is without basis.

### B. Infinitive has adequately pled that Ms. Moye breached her nonsolicitation covenant.

Ms. Moye next argues that Counterclaim I fails to "allege any facts to support the claim." This is not accurate.

The Counterclaims allege that under her Employment Agreement with Infinitive, Ms. Moye had a post-employment obligation to refrain from:

> either directly or indirectly, separately or in association with others, interfere with, impair, disrupt or damage the Company's business by hiring, soliciting, inducing, encouraging or attempting to hire any of the Company's employees or causing others to hire, solicit, induce or encourage any of the Company's employees to discontinue their employment with Company or to seek or accept any employment with any other business entity that performs competitive Client Services or Products.

(Dkt. 86 at 71, ¶ 12.) That obligation ran from March 2023 to March 2024. (*Id.* at 78, ¶ 42.) Despite this obligation, Ms. Moye improperly encouraged others to solicit Infinitive employees (*Id.* at 79, ¶ 44.) Additionally, Ms. Moye directly solicited her sister away from Infinitive. (*Id.*) Ms. Moye used other 11:59 employees, including Mr. McGinn and Ms. Hair, to maintain "plausible deniability," while they solicited Infinitive employees on her behalf. (*Id.* at 80, ¶ 49.) Ms. Moye's sister eventually left Infinitive and joined 11:59 because of Ms. Moye's improper solicitation of her in breach of her contractual obligations. (*Id.* at 81, ¶ 51.)

7

Each of the above is a factual allegation that, if proven, would demonstrate Ms. Moye's breach of her contractual obligations to Infinitive. Ms. Moye's argument that Infinitive "failed to allege *any* facts" is simply not accurate.[2] Her Motion to Dismiss Counterclaim I should be denied.

## II. Infinitive Has Properly Pled a Claim for Tortious Interference with its Business Expectancies Against 11:59.

In Counterclaim II, Infinitive has brought a claim against 11:59 for tortious interference with the business expectancies it had with its clients. Similar to the arguments made as to Counterclaim I, 11:59 argues that Counterclaim II should be dismissed: (i) as precluded by the Settlement Agreement; and (ii) because Infinitive allegedly failed to plead improper methods. Neither argument is well-founded.

### A. Counterclaim II is not precluded by the Settlement Agreement.

The "whereas" clauses in the Settlement Agreement establish clearly what the parties intended by entering into that agreement. (Dkt. 107-1 at 4 of 14.) At the time of that agreement, Infinitive believed that 11:59 had induced Mr. Sheridan and Ms. Moye to recruit and solicit nine Infinitive employees to leave their employment with Infinitive and join 11:59 in violation of their Employee Non-Solicitation Covenants. (*Id.*) Infinitive threatened to bring claims against 11:59 for tortious interference with the Non-Solicitation Covenants and interference with Infinitive's employment relationships with the nine employees who had left Infinitive for 11:59. (*Id.*) As part

---

[2] Infinitive notes that since filing the Counterclaims, discovery in this case has so far revealed that Ms. Moye (i) encouraged Infinitive employees to reach out to 11:59's recruiter, (ii) forwarded the information of potential candidates to Jim McGinn, who admitted he was building Ms. Moye's team for her, and (iii) talked to her sister, Laura Moye, as part of her recruitment, including informing her that an offer was forthcoming. . To the extent the Court finds the current allegations in the Counterclaims are insufficient to state a claim for breach of contract, Infinitive request leave to amend to add these details to its pleading.

of the agreement, Infinitive covenanted not to sue 11:59, but only as to those Threatened Claims. (*Id.*, ¶ 2.)

In contrast to the Threatened Claims at the time of the Settlement Agreement, Counterclaim II asserts conduct that was unbeknownst to Infinitive at the time of the Settlement Agreement — that 11:59 was also intentionally interfering with Infinitive's *client* relationships and the business expectancies related to those relationships. This is a completely different legal claim based on completely different conduct engaged in by 11:59. In Counterclaim II, 11:59 is accused of improperly contacting Infinitive's clients and using Infinitive's confidential information to interfere with Infinitive's client relationships. (*See* Dkt. 86 at 85, ¶¶ 67-69. This is not the same as the conduct that led to the Settlement Agreement — the solicitation and hiring of Infinitive's employees — and therefore clearly not covered by the agreement's covenant not to sue.

11:59's argument that the Settlement Agreement precludes Counterclaim II is without merit, and the Motion to Dismiss based on that argument should be denied.

### B. Infinitive properly pled improper methods.

11:59 alternatively argues that Infinitive failed to plead the necessary element of improper methods in Counterclaim II.[3] (Dkt. 107 at 17.) This is not accurate.

As 11:59 seemingly acknowledges, the list of conduct that constitutes "improper methods" under Virginia law is broad and includes, among other things, "misuse of inside or confidential information" and "unfair competition." (*Id.* at 18.) The Counterclaims allege multiple 11:59 employees, including Mr. McGinn, Ms. Hair, and Mr. Sheridan, improperly retained, copied, and

---

[3] As best as can be discerned, 11:59 concedes that the remaining elements for the claim of tortious interference have been properly pled.

9

replicated Infinitive's work product to interfere with Infinitive's client relationships and business expectancies. (*See* Dkt. 86 at 75-78 (¶¶ 34-41); at 85 (¶ 69).) The theft and use of Infinitive's work product is both a misuse of information and unfair competition. Consequently, improper methods have been properly alleged.

Additionally, contrary to 11:59's representation in its brief, an employee's solicitation of a customer is an improper method when it violates a contractual obligation to refrain from such solicitations. *See Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 247 Va. 240, 246 (1994); *TechINT Sols. Grp., LLC v. Sasnett*, 2019 WL 4935432, at *12 (W.D. Va. 2019). That is precisely what is alleged in the Counterclaim. Mr. Sheridan had a post-employment obligation to Infinitive not to solicit Infinitive's customers. (Dkt. 86 at 71, ¶ 12.) 11:59 was aware of Mr. Sheridan's post-employment obligations, yet still encouraged him to solicit Infinitive's customers and steal those relationships. (*See id.* at 73-75, ¶¶ 18-33.) This constitutes improper methods under Virginia law.

In its brief, 11:59 incorrectly argues the contrary, stating, "Infinitive cannot base its tortious interference claim on the alleged violation of Sheridan's contractual obligations." (Dkt. 107 at 18.) In support of this misstatement of the law, 11:59 cites to a single case from the Southern District of West Virginia, which applied *West Virginia law.* (*See id.* (citing *N. Ave. Cap., LLC v. Ranger Sci. LLC*, 2024 WL 2097596 (S.D.W. Va. 2024).) West Virginia law differs significantly from Virginia law,[4] and that case has no applicability to the instant matter. 11:59 does not provide

---

[4] The issue in *Ranger* was decided based on "West Virginia's 'gist of the action' doctrine," which states, "an action in tort cannot arise for breach of contract unless the action in tort would arise independent of the existence of the contract." 2024 WL 2097596 at *3, *5. That doctrine is not recognized in Virginia.

10

any explanation for why *Ranger* would be relevant here, or why Virginia Supreme Court precedent should be ignored.

In sum, 11:59's argument for dismissal of Counterclaim II is without merit.

### III.   Infinitive has Stated a Claim for Statutory Conspiracy Against Counter-Defendants.

In Counterclaim III, Infinitive alleged that both Counter-Defendants were members of a larger conspiracy that sought to willfully and maliciously injure Infinitive's business. Counter-Defendants argue that the claim should be dismissed under a variety of theories, none of which are viable. For the reasons explained below, the Motion to Dismiss should be denied.

#### A.   The conspiracy claim is not subject to dismissal based on the intracorporate immunity doctrine.

Counter-Defendants' primary claim for dismissal of Counterclaim III is an argument that the claim is barred by the intracorporate immunity doctrine. (*See* Dkt. 107 at 20-21.) This is not the case.

When it applies, the intracorporate immunity doctrine provides that each of the agents of an employer is considered to be one person for the purpose of a conspiracy. Thus, if there are no conspirators outside the company and the doctrine applies, a group of actors can lack the necessary "two or more persons" needed to form a conspiracy. *See, e.g., ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). However, when there *are* additional conspirators who are *not* agents of the company, the doctrine has no effect on preventing a claim. *See Phoenix Renovation Corp. v. Rodriguez*, 403 F. Supp. 2d 510, 517 (E.D. Va. 2005) ("Phoenix also alleges that Koci and Rodriguez conspired with Scott Davis, a Phoenix employee at the time, to violate Davis's covenant not to compete with Phoenix. Because this alleged conspiracy occurred while Davis was an employee of Phoenix, not Atlantic, it also does not implicate the intracorporate immunity doctrine.").

11

In making their argument that the doctrine prevents the conspiracy claim in the instant case, Counter-Defendants state that:

> Infinitive alleges only that the conspirators were 11:59, and its employees, Ms. Moye, Mr. McGinn, Ms. Hair, Mr. Sheridan. [D.E. 86 ¶73].

(*Id*.) This representation is <u>simply not accurate</u>. In fact, the very paragraph cited by Counter-Defendants in their brief, Paragraph 73, states the following:

> 11:59 and Ms. Moye along with other co-conspirators, including but not limited to Mr. McGinn, Ms. Hair, Mr. Sheridan, and <u>Mr. Sellery</u> have mutually undertaken and acted in concert for the purpose of willfully and maliciously injuring Infinitive's business interests.

(Dkt. 86 at 85, ¶ 73 (emphasis added).) Mr. Sellery, whose name is somehow missing from Counter-Defendants' brief, is and was an employee of *Infinitive* not 11:59. (*See id.* at 74, ¶¶ 27-28.) Consequently, even if the requirements of the intracorporate immunity doctrine covered each of the 11:59 employees, there would still exist a conspiracy of two or more persons. *See Phoenix Renovation*, 403 F. Supp. 2d at 517.

Furthermore, the intracorporate immunity doctrine does not even apply when conspirators are driven by personal motives. *See, e.g., Bell v. City of Roanoke Sheriff's Off.*, 2009 WL 5083459, at *4 (W.D. Va. Dec. 23, 2009). In the Counterclaims, Infinitive alleges the conspirators in their communications "described Infinitive as 'appalling,' 'disgusting,' and '[t]heir noses are too high to see past them.'" (Dkt. 86 at 84, ¶ 58.) The conspirators expressed joy in learning that one of Infinitive's clients no longer wanted to work with Infinitive. (*Id.* at 74, ¶ 26.) One conspirator stated, "the company [Infinitive] can go rot." (*Id.* at 75, ¶ 32.) She later insinuated that she had "PTSD" from her time as an employee of Infinitive. (*See id.* at 76, ¶ 37.) The conspirators also laughed and mocked the fact that Infinitive's CEO appeared to be frustrated at an event where they saw him because they believed his anger was tied to his concerns of the conspirators' own improper conduct. (*Id.* at 82-83, ¶¶ 54.)

Collectively, these allegations are sufficient, at least at the motion to dismiss stage, to suggest that the conspirators were driven to their illegal conduct by personal motives of spite against their former employer, separate and apart from 11:59's business motivations. Consequently, the intracorporate immunity doctrine is inapplicable.

### B. Infinitive has pled sufficient wrongful conduct to establish a statutory conspiracy.

As best as can be discerned, Counter-Defendants' next argument is that Infinitive has not adequately alleged sufficient wrongful conduct to state a conspiracy claim. (*See* Dkt. 107 at 21.) However, in the course of the Counterclaims, Infinitive alleges that the conspirators collectively: (i) worked to steal Infinitive's customers and prospective customers; (ii) retained, copied, and used Infinitive's work product for the benefit of 11:59; (iii) encouraged and benefited from the breach of an Infinitive employees' duty of loyalty to Infinitive; and (iv) raided Infinitive of its employees in violation of post-employment covenants.

To the extent Counter-Defendants argue that the above is insufficient to state a claim for conspiracy, that argument fails.

### C. The Court has personal jurisdiction over Ms. Moye for the conspiracy claim.

Ms. Moye also argues that the Court is without personal jurisdiction over her on the conspiracy claim. (*See* Dkt. 107 at 15.) This is not correct.

In her employment agreement with Infinitive, Ms. Moye agreed that she "irrevocably consents to the exclusive jurisdiction of the federal and state courts located in Virginia, as applicable, for any matter arising out of or relating to this Agreement." (Dkt. 107-1 at 12 of 14, ¶ 18.) Because the conspiracy claim in Counterclaim III arises out of and relates to the agreement, the Court has jurisdiction over her.

13

Ms. Moye's jurisdiction argument relies entirely on her flawed assertion that Infinitive somehow agreed not to bring a breach of contract action against her. As explained above, that argument is without merit. Moreover, *even if* Ms. Moye were somehow correct that she was included in the covenant not to sue, there is no plausible argument that Infinitive somehow waived the jurisdictional consent in the employment agreement. Consequently, this Court has jurisdiction over her and the conspiracy claim.

Moreover, *even if* Ms. Moye had not consented to jurisdiction, there would still be jurisdiction over the conspiracy claim because a conspirator is subject to personal jurisdiction in Virginia "when a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with Virginia to subject that conspirator to jurisdiction in Virginia." *Doe v. Mast*, 741 F. Supp. 3d 409, 461 (W.D. Va. 2024) (citing *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013)). In the Counterclaims, Infinitive alleges that "the majority of conduct undertaken in furtherance of the conspiracy occurred in Virginia and was aimed at harming a company headquartered in Virginia." (Dkt. 86 at 70, ¶ 7.) As best as can be discerned, Ms. Moye does not contest that the other conspirators, including Mr. Sheridan and Mr. McGinn, engaged in their improper conduct in Virginia. Consequently, that conduct is imputed to Ms. Moye, and the Court has jurisdiction over her for the conspiracy claim.

IV. **Ms. Moye's Argument That She Was "Improperly Joined" Is Baseless.**

In Section V of Counter-Defendants' brief, Ms. Moye argues the following (in full):

> Moye is not a plaintiff in this action. Infinitive moved pursuant to Fed. R. Civ. P. 15(a) for leave to Amend its Answer and Affirmative Defenses to include an additional defense and Counterclaims, but did not move to add a Third-Party Defendant pursuant to Fed. R. Civ. P. 14(a). D.E. 77 (the "Motion to Amend"). Moye, not being a party, did not appear to oppose the amendment, which was granted by the Court. See, D.E. 80, 84. Moye is not a proper counterclaimant nor Third-Party Defendant, and should not have been joined in this action. As such, Moye is an improper party to this matter and must be dismissed.

(Dkt. 107 at 22.)  Nearly every part of this paragraph is mistaken.

To begin with, Rule 14 has nothing to do with Infinitive's claims against Ms. Moye.  Rule 14 governs *third-party defendants*, which is a party who is "liable to [a defending party] for all or part of the claim against it."  *See* Rule 14(a)(1).  That means it only applies when a "third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party."  6 Fed. Prac. & Proc. Civ. § 1446 (3d ed. 2025).  A typical third-party claim is one for indemnity or contribution.  *See id.*  To state the obvious, Infinitive's claims against Ms. Moye are not dependent on 11:59's claims against Infinitive.

The claims asserted against Ms. Moye are related to Infinitive's counterclaims against 11:59 and are governed by Rule 13(h), which <u>specifically permits</u> adding new parties when asserting a counterclaim.

Additionally, this precise issue was already (incorrectly) asserted by 11:59 prior to the hearing on Infinitive's motion for leave to file the counterclaims (*see* Dkt. 80), and leave was still granted by the Court to Infinitive over this objection (Dkt. 84).  To the extent 11:59 believed that leave was improperly granted, it could have appealed the Magistrate Judge's ruling to the District Court but did not do so.

Next, to the extent Ms. Moye's complaint is that she was not present at the hearing on the motion for leave, that complaint has no basis.  A new party is not invited to a hearing for leave to be added to the case.  That is true whether leave is sought under Rule 13, Rule 14, or Rule 15.  Furthermore, if Ms. Moye *wanted* to be heard on the motion for leave, she was well aware of the hearing, and her current counsel was present and could have requested time to make any statement on her behalf.

Lastly, even if Ms. Moye were somehow correct that she is properly labeled a "third-party defendant" rather than a counter-defendant and/or that 11:59's motion for leave should have arisen under Rule 14 rather than Rules 13 and 15, any such mislabeling would not constitute a basis for dismissal under Rule 12. In sum, Ms. Moye's argument on this front is entirely baseless.

## CONCLUSION

For the reasons stated above, Counter-Defendants' Motion to Dismiss should be denied in its entirety.

Dated: July 10, 2025                               Respectfully submitted,

                                                                       /s/ Micah E. Ticatch
                                      Micah E. Ticatch, Va. Bar No. 83351
John W. H. Harding, Va. Bar No. 87602
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
mticatch@islerdare.com
jharding@islerdare.com
*Counsel for Infinitive, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 10th day of July 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

             /s/ Micah E. Ticatch
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
mticatch@islerdare.com

*Counsel for Infinitive, Inc.*