UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| M CORP DBA 11:59,<br><br>               Plaintiff,<br><br>v.<br><br>INFINITIVE, INC., JOSEPH BRADLEY SHERIDAN, DATABRICKS INC., WILLIAM McKINNEY, CHERYL MILES, AND DOES 1-25, INCLUSIVE.<br><br>               Defendants.<br><br>INFINITIVE, INC.,<br><br>               Counterclaim Plaintiff,<br><br>v.<br><br>M CORP DBA 11:59 AND ALISON MOYE.<br><br>               Counterclaim Defendants. | Civil Action: 1:24-cv-1823 |

**PLAINTIFF/COUNTER-DEFENDANT M CORP DBA 11:59 AND COUNTER-DEFENDANT ALISON MOYE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF INFINITIVE INC.'S COUNTERCLAIMS**

Sensitive

**PRELIMINARY STATEMENT**

Plaintiff/Counter-Defendant M Corp dba 11:59 ("11:59" or the "Plaintiff"), and Counter-Defendant Alison Moye ("Moye") submit this Reply Brief in Further Support of their Motion to Dismiss Defendant/Counter-Plaintiff Infinitive Inc.'s ("Infinitive") Counterclaims (the "Motion") (D.E. No. 107).

Infinitive argues in opposition to the Motion that, at the time 11:59 hired Defendant Joseph Brad Sheridan ("Sheridan") and Counter-Defendant Alison Moye ("Moye"), "Ms. Moye and Mr. Sheridan's non-solicitation covenants with Infinitive were in effect and continuing until March 2024." D.E. 113 at 3. Infinitive concedes that Infinitive and 11:59 entered into a Settlement Agreement (the "Settlement Agreement"), by which Infinitive covenanted not to sue or otherwise assert any legal claim against 11:59 for "Threatened Claims," explicitly being "tortious interference with Infinitive's contracts and employment relationships." By its silence, Infinitive concedes that it received full consideration for that covenant.

This Court should dismiss Infinitive's Counterclaims, in part, for being violative of, and barred by, the Settlement Agreement. Infinitive covenanted not to sue regarding Infinitive's contracts and *employment* relationships – not Infinitive's *employment* contracts and relationships. Due to its placement in the sentence, employment cannot modify both contracts and relationships, and the Settlement Agreement is not limited to non-solicitation of employees. As acknowledged by Infinitive, the Court can only interpret the actual words in the Settlement Agreement and cannot change the language to which the parties agreed.

Infinitive's opposition to the Motion misinterprets the Settlement Agreement. As a matter of law, the Court should interpret Infinitive's release of claims against 11:59 to include a breach

2

of contract claim against Moye, 11:59's Chief Transformation Officer, and the tortious inference claim against 11:59. As such, the Court must dismiss Counterclaims One and Two.

Infinitive's Third Counterclaim, statutory conspiracy, fails for several reasons. Infinitive's claim under § 18.2-499 is barred by the intra-corporate immunity doctrine. Infinitive's argument that the intra-corporate immunity doctrine is inapplicable because Infinitive's then (and current) employee conspired with 11:59's employees is a false tautology. Just as 11:59 cannot conspire with itself, Infinitive cannot maintain a conspiracy claim when the only alleged co-conspirator outside of 11:59 is Infinitive itself. Otherwise, when a company is caught engaging in corporate espionage or tortious interference, it would just play the victim and assert a statutory conspiracy claim. In addition, the statutory conspiracy claim must be dismissed if the tortious interference claim against 11:59 is dismissed, as Infinitive has not alleged any other "unlawful act" against 11:59.

Finally, by not arguing otherwise, Infinitive implicitly concedes that as to Moye, it has not pleaded any "unlawful act" to proceed against her on a business conspiracy claim under Code §§ 18.2–499 and –500, and waives any argument to the contrary. For this reason, in addition to lacking jurisdiction over Moye, the Court must dismiss the statutory conspiracy claim against her.

The Court should dismiss Infinitive's Counterclaims, with prejudice.

## ARGUMENT

### I.  INFINITIVE CONCEDES THAT THE COURT MAY CONSIDER BOTH THE SETTLEMENT AGREEMENT AND MOYE'S EMPLOYMENT AGREEMENT

By its silence, Infinitive effectively concedes that both the Settlement Agreement and Moye's Employment Agreement are "integral to and explicitly relied on in the" counterclaim, and that upon this Motion to Dismiss, the Court may consider both documents. *See* Dkt. 107.1,

Declaration of Alison Moye, dated June 26, 2025 ("Moye Decl.") at Exhibits 1 and 2; *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge [the document's] authenticity") (quotations and citations excluded). To the extent Infinitive disputed that the Settlement Agreement barred all the claims within the Counterclaim, it could have asserted that the Court exclude the Settlement Agreement from consideration of this Motion. By conceding that the Court may consider the Settlement Agreement, Infinitive essentially admits that the Settlement Agreement bars claims within the Counterclaim.

## II. INFINITIVE FAILS TO STATE A CLAIM AGAINST MOYE FOR BREACH OF THE INFINITIVE EMPLOYMENT AGREEMENT (COUNTERCLAIM ONE)

### A. Moye May Enforce the Settlement Agreement

Infinitive concedes that under the settlement agreement, it agreed not to initiate a legal action against 11:59 for the Threatened Claims. D.E. 113 at 4. Although it further asserts that Infinitive did not provide any kind of *release* to 11:59, in this case, it is a distinction without a difference, as Infinitive covenanted not to sue 11:59 for the Threatened Claims, including those involving the non-solicitation provisions in Moye's Employment Agreement.[1] The Settlement Agreement precludes suit against Moye for an alleged breach of her Employment Agreement.

---

[1] Infinitive failed to differentiate a covenant not to sue from a release. A covenant not to sue is "an agreement not to enforce an existing cause of action against another party to the agreement." *Bolton v. McKinney,* 299 Va. 550, 554 (2021) (quoting 66 Am. Jur. 2d *Release*, § 4 (Feb. 2021 update). "It is recognized in most jurisdictions, including Virginia, that a covenant not to sue can be asserted as a complete bar to any subsequent actions initiated by the obligee against the obligor that are covered by the terms of the agreement." *Bolton,* 299 Va. at 554 (citing 16 Michie's Jurisprudence, *Release*, § 3 & n.448 (2021 update).

4

Counterclaim One is limited to Moye allegedly soliciting Infinitive's *employees*. See D.E. 86 ¶63 ("Ms. Moye breached that agreement by directly soliciting her sister as well as indirectly soliciting other employees from Infinitive to join her at 11:59"). In this regard, suing Moye, 11:59's Chief Operating Officer, for alleged acts taken within the scope of her employment at 11:59, is indistinct from suit against 11:59 itself. *See, e.g, Kensington Assocs. v. West,* 234 Va. 430, 362 S.E.2d 900, 901 (1987) (Under Virginia law, an employee acts within the scope of his employment if: (1)[The act] was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.").[2] Thus Counterclaim One is barred by the Settlement Agreement.

Moreover, by executing the Settlement Agreement, Infinitive waived its right to seek enforcement of the non-solicitation provision in the Employment Agreement. Infinitive chooses not to address the Virginia's Supreme Court's clarification that the owner of a contract "right may waive it expressly, either in writing or by parol, and *impliedly by inconsistent conduct*."

---

[2] "A servant's tortious act is within the scope of employment if, but only if, it is actuated *at least in part*, by a purpose to serve the master." *Auckland v. Gilead Sciences, Inc.,* No. 7:24-CV-00501, 2025 WL 1924386, at *6 (W.D. Va. July 14, 2025) (citing *Parker v. Carilion Clinic*, 819 S.E.2d 809, 821 (Va. 2018)). Since Infinitive pleaded that 11:59 conspired with Moye, Infinitive cannot plausibly assert that Moye was not actuated *at least in part*, by a purpose to serve 11:59, and thus was acting within the scope of her employment. Indeed, the Settlement Agreement solidifies that Infinitive understood that contracting with 11:59 prevented Moye from continuing to allegedly breach her Employment Agreement.

5

*See*, *e.g.*, *RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*, 297 Va. 327, 341 (2019) (quotation omitted).  The *RMBS* Court stated:

> *As with other contractual provisions*, to determine whether a party has waived enforcement of a forum selection clause, the court must consider the extent to which the party has taken actions inconsistent with its enforcement…
> When it is established that the party has relinquished its right, having knowledge of the right and the intention to waive it, the waiver will be enforced. It is, of course, elementary that silence, when there is a duty to speak, may result in the waiver of one's rights or the estoppel to assert them.

*RMBS Recovery Holdings,* 297 Va. at 341-342 (emphasis added) (internal citations omitted). *Pysell v. Keck,* 263 Va. 457, 461 (2002), cited by Infinitive, D.E. 113 at 6, does not prevent "clear and convincing evidence" of waiver to be determined via inconsistent conduct. Infinitive merely argues that "the mere fact that a potential plaintiff settles with a third party accused of *inducing* a breach of contract does not imply the plaintiff intended to waive its claims against the actual breaching party." D.E. 113 at 6.  However, the Settlement Agreement was expressly negotiated to cover the *exact* conduct under which Infinitive is currently suing Moye. Infinitive argues that at the time 11:59 hired them, "Ms. Moye and Mr. Sheridan's non-solicitation covenants with Infinitive were in effect and continuing until March 2024," and the Threatened Claims revolved around those non-solicitation covenants. D.E. 113 at 3. Infinitive's execution of the Settlement Agreement is clear and convincing evidence of conduct inconsistent of Infinitive's intent to preserve the right to pursue claims against Moye, individually.[3] All of the conduct complained of is alleged to have occurred while Moye was employed by 11:59, and prior to execution of the Settlement Agreement.

Infinitive acknowledges that if Moye is a third-party beneficiary of the Settlement Agreement, she could enforce the Settlement Agreement. D.E. 113 at 7 n.1. By moving to dismiss Counterclaims I and III, that is exactly what Moye seeks to do.  To the contrary, "Infinitive is not

---

[3] Infinitive did not bring a counterclaim against Sheridan, re-hiring him instead.

seeking to enforce the Settlement Agreement," D.E. 113 at 7. By entering into the Settlement Agreement, Infinitive received the benefit of the agreement – it cannot now seek an end-run around its agreement.

Infinitive further attempts to dispute that it is equitably estopped from maintaining its breach of contract counterclaim against Moye based solely on factitiously asserting that arbitration agreements are distinct from other contracts. *See* D.E. 113 at 7. However, equitable estoppel separate and apart from an arbitration agreement is well established under Virginia law. *See, e.g., In re Stokes,* 198 B.R. 168, 178 (E.D. Va. 1996) (citing *Heath v. Valentine,* 177 Va. 731, 15 S.E.2d 98, 100 (1941). Infinitive silently concedes that Moye ceased allegedly soliciting Infinitive's employees after it executed the Settlement Agreement – there are no allegations in the Counterclaims that Moye solicited any employees afterward. Infinitive must be estopped from claiming that it can still sue Moye despite the Settlement Agreement. Simply put, it belies common sense that Infinitive should be able to negotiate the benefit of a settlement agreement based upon Moye's alleged activity, and then proceed, years later, to sue Moye over that same alleged conduct.

> **B.     Regardless of the Settlement Agreement, Infinitive Fails to State a Breach of Contract Claim**

The Court must dismiss Counterclaim One because Infinitive failed to allege any facts to support the claim. Infinitive bases its breach of contract counterclaim on the conclusory allegation that Moye directly solicited her sister away from Infinitive.[4] Without stating a single supportive fact, Infinitive merely jumps to the legal conclusion that "Laura Moye left Infinitive because of Alison Moye's solicitation of her in breach of Moye's contractual obligations." D.E. 86 ¶ 51. The court need not accept a legal conclusion as true. *See* D.E. 107 at 9-10. Indeed, Infinitive concedes

---

[4] None of the other allegations cited in the Counterclaim reference *any* action by Moye. *See, e.g.* D.E. 86 ¶ 49 (referencing texts between McGinn and Hair).

7

that it fails to state a claim by half-heartedly - in a footnote - requesting leave to amend the Counterclaim. *See* D.E. 113 at 9 n.2.

In any event, Infinitive is unable to plead all the elements of its breach of contract counterclaim. "It is axiomatic that the purpose of damages for breach of contract is to place the injured party in the position he would have occupied had the defendant performed." *TransDulles Ctr., Inc. v. USX Corp.*, 976 F.2d 219, 226 (4th Cir. 1992) (citation omitted). By entering into the Settlement Agreement, Infinitive received full consideration and was made whole for Moye's alleged violation of the non-solicitation provision in her Employment Agreement. Via the Settlement Agreement, Infinitive resolved all its alleged damages for 11:59, Sheridan *and* Moye allegedly soliciting Infinitive's employees prior to that date. *See, e.g., Bolton,* 299 Va. at 554 ("The remedy for a breach of contract 'is intended to put the injured party in the same position in which it would have been had the contract been performed.'") (citation omitted).

Infinitive cannot recover for the same damages twice. Thus, Infinitive cannot establish damages resulting from Moye's alleged breach of her Employment Agreement, and it cannot prove the elements of its breach of contract counterclaim against her. *See HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.,* 737 F. Supp. 2d 533, 541 (E.D. Va. 2010) (citing *Filak v. George,* 267 Va. 612, 619 (2004)). Any argument otherwise will leave Infinitive with an impermissible windfall.

### III. IF COUNTERCLAIM ONE FOR BREACH OF CONTRACT IS DISMISSED, THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MOYE

When the Court dismisses the breach of contract claim against Moye, the Virginia choice of law and forum selection provision in the Employment Agreement does not apply to create personal jurisdiction over Moye in connection with the conspiracy claim. Pursuant to the Employment Agreement, Moye consented to jurisdiction of federal and state courts located in

Virgina "for any matter arising out of or relating to this Agreement." The conspiracy claim does not arise out of or relate to the Employment Agreement.

### IV. INFINITIVE FAILS TO PLEAD A VIABLE CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES AGAINST 11:59 (COUNTERCLAIM II)

Contrary to Infinitive's argument, the "whereas" clause of the settlement agreement does not preclude dismissal of Counterclaim Two.

#### A. The Settlement Agreement Precludes Counterclaim Two Because It Arises Out of the Threatened Claims Upon Which Infinitive Agreed Not to Sue

Counterclaim Two for Tortious Interference is precluded by Infinitive's agreement not to sue 11:59. Infinitive argues that the "whereas" clause in the Settlement Agreement demonstrates that the Settlement Agreement only governed non-solicitation of employees and not clients. D.E. 113 at 9.

"Whereas" clauses, or contract recitals, are used when enumerating background facts and recitals for an agreement, but they are not binding conditions for an agreement. *See, e.g., Brooks v. Commissioner of Internal Revenue*, 109 F.4th 205, 212-13 (4th Cir. 2024) (citing *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985) (cleaned up). As such, they "cannot create any right beyond those arising from the binding terms of an agreement." *See Brooks*, 109 F.4th at 212-13 (internal citations omitted).

Infinitive concedes that it covenanted not to sue 11:59 as to the Threatened Claims. The Agreement defined "Threatened Claims" as "claims against 11:59 for tortious interference with Infinitive's contracts and employment relationships." *See* D.E. 113 at 6. Infinitive is bound by the terms of the Settlement Agreement's definition of "Threatened Claims." "Threatened Claims" were *not* defined as tortious interference with Infinitive's *employment* contracts and relationships

9

– just with Infinitive's *contracts* and employment relationships. The Court cannot read words into the Settlement Agreement. "Courts cannot read into contracts language which will add to or take away the meaning of words already contained therein." *Pysell v. Keck,* 263 Va. 457, 460, 559 S.E.2d 677, 678–79 (2002) (quoting *Southerland v. Southerland,* 249 Va. 584, 590, 457 S.E.2d 375, 378 (1995)), cited by Infinitive (D.E. 113 at 6); *see also Osman v. Youngs Healthcare, Inc.*, 2023 WL 2021703, at *6 (E.D. Va. 2023) (Alston, J.) ("The Supreme Court of Virginia has noted that the guiding light of contract interpretation under Virginia law is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."). Thus, the express language of the Settlement Agreement does not limit the agreement to employment relationships, but all relationships, including client relationships. The language of the "whereas" clause is irrelevant.

### B. Infinitive Has Not Alleged Sufficient Facts to State a Plausible Claim for Tortious Interference with Business Expectancies

Even if Infinitive had not waived Counterclaim Two against 11:59, which it has, the tortious interference claim is also substantively deficient. Infinitive fails to claim that 11:59 engaged in legally cognizable "improper methods" in its alleged interference.

In its brief, Infinitive claims that the Counterclaim alleges that 11:59 employees "improperly retained, copied, and replicated Infinitive's work product." *See* D.E. 113 at 10-11. However, Infinitive alleges that its *own employee*, Michael Sellery ("Sellery"), *voluntarily* disclosed information regarding Infinitive's unnamed client to Sheridan by sending a photo to Sheridan's personal email with information regarding the client. *See* D.E. 86 ¶¶ 28-29 (*See* Moving Br.). Infinitive *completely ignores* and does not address Sellery's action. Infinitive has not pled that 11:59, nor anyone on its behalf, improperly requested or sought the information that Sellery provided to Sheridan. 11:59's use of this information is not improper.

10

Infinitive also claims that former Infinitive employee, McGinn who was not under any restrictive covenants, retained Infinitive work product after he was terminated by Infinitive, which he used to create a presentation on behalf of 11:59. *See* D.E. 86 ¶¶ 34-41. Notably, Infinitive never refers to this "work product" as proprietary or confidential, because it was not.[5] There are no "improper methods" pleaded.

Infinitive relies upon *Hilb, Rogal & Hamilton Co. of Richmond v. DePew,* 247 Va. 240, 246, 440 S.E.2d 918 (1994) for the proposition that an "employee's solicitation of a customer is an improper method."[6] *See* D.E. 113 at 11. However, it is well established that "[b]reach of a non-compete clause alone is not an improper method or means[.]" *Tactical Rehab., Inc. v. Youssef,* No. 2:24-CV-173, 2024 WL 4712696, at *9 (E.D. Va. Nov. 7, 2024) (citing *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC,* 284 Va. 382 (Va. 2012)). Infinitive has not pleaded that 11:59 misused any *confidential or proprietary* information belonging to Infinitive.

Infinitive must not have considered Sheridan to have engaged in any "improper method," as it hired Sheridan back, and currently employs him (along with Sellery).

### C. The Settlement Agreement Bars Any Claim of Tortious Interference Against 11:59 With Regard to the Alleged Solicitation of Employees

Infinitive utterly ignores and thus concedes 11:59's argument that to the extent Infinitive alleges a tortious interference claim related to the solicitation of its employees, such a claim is barred by the Settlement Agreement. *See, e.g., United Supreme Council v. United Supreme Council*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a

---

[5] Infinitive even published the slide in the Counterclaims, demonstrating its lack of confidential or proprietary information. *See* D.E. 86 ¶37.
[6] *Hilb* is distinguishable and involved a suit by a former employer against its former employee, not against the former employee's new employer. Infinitive has not plead that 11:59 itself engaged in any "improper method."

dispositive pleading results in a concession of that claim. "), *aff'd on other grounds sub nom.*, 792 F. App'x 249 (4th Cir. 2019); *Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 618 (W.D. Va. 2025) (Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims") (internal citations omitted).

## V. INFINITIVE FAILS TO PLEAD A VIABLE CLAIM FOR CONSPIRACY AGAINST 11:59

### A. Counterclaim Three Fails Due to the Intra-Corporate Immunity Doctrine

The intra-corporate immunity doctrine precludes the statutory conspiracy claim against 11:59. Infinitive attempts to argue that intra-corporate immunity doctrine "does not even apply when conspirators are driven by personal motives." *See* D.E 113 at 12 (citing *Bell v. City of Roanoke Sheriff's Off.*, 2009 WL 5083459, at *4 (W.D. Va. Dec. 23, 2009)). But *Bell* actually describes employees who are "*dominated* by personal motives[.]" *Bell*, at *4 (emphasis added). And, moreover, Infinitive does not actually describe any allegations of being driven (or dominated) by personal motives, instead describing simple *schadenfreude* at the prospect of 11:59 succeeding over a competitor. *See* D.E 113 at 12.

Infinitive concedes that if there are no conspirators outside 11:59, the intra-corporate immunity doctrine applies. *See* D.E. 113 at 12. Infinitive argues, instead, that the intra-corporate immunity doctrine does not apply because 11:59's employees allegedly conspired with *Sellery, Infinitive's* employee. Infinitive alleges that its own employee, who Infinitive does not allege acted outside the scope of his employment, and who continues to be employed by Infinitive, conspired with 11:59. In other words, Infinitive is alleging that Infinitive itself conspired with 11:59. *See, e.g., Lewin v. Cooke,* 95 F.Supp.2d 513, 524 (E.D. Va. 2000) (explaining that "because

12

a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy").

Infinitive has failed to allege that **Sellery,** its then and current employee, acted with purpose to injure Infinitive's reputation, trade, or business. *See Schlegel v. Bank of Am., N.A.,* 505 F. Supp. 2d 321, 328–29 (W.D. Va. 2007) (citation omitted) ("Plaintiff has not alleged that Defendant acted with the required *mens rea*: intentionally and purposefully. Additionally, nothing in Plaintiff's complaint would support such an inference. Because Plaintiff has failed to allege such a purpose and because there are no facts in his complaint that would support an inference of such a purpose, his complaint is legally insufficient."). Thus, either Infinitive used Sellery in a plot akin to entrapment, or Infinitive, through Sellery, voluntarily disclosed information to 11:59. In any event, if Sellery did not act with improper motives, he could not and did not conspire with Moye, McGinn, Hair, and Sheridan. 11:59 cannot conspire with its own employees, and the Court must dismiss Counterclaim Three.

### B. Infinitive Still Fails to Plead a Claim for Conspiracy

Even if the intra-corporate immunity doctrine does not apply the statutory conspiracy claim must be dismissed if the Court dismisses the tortious interference claim. Without the tortious interference claim, Infinitive has not plead an "unlawful act" against 11:59.

Infinitive concedes by its silence that Moye's alleged breach of her non-solicitation covenant cannot be the basis of its statutory conspiracy claim against Moye. Although Infinitive alleged a tortious interference with business expectancy as the basis of "unlawful act" to proceed on a business conspiracy claim against 11:59, *see Dunlap v. Cottman Transmission Systems, LLC,* 287 Va. 207, 215, 754 S.E.2d 313, 317 (Va. 2014), Infinitive has not alleged that Moye engaged in tortious interference with business expectancy. Infinitive has not alleged that Moye engaged in

13

any action other than solicitation of Infinitive's employees.  Infinitive does not dispute that, as to Moye, it has failed to plead any "unlawful act" to proceed on a business conspiracy claim under Code §§ 18.2–499 and –500. *See United Supreme Council*, 329 F. Supp. 3d at 292; *see also Evans*, 766 F. Supp. 3d at 618 (Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims") (internal citations omitted). The elements of the statutory conspiracy claim are not adequately pled, and the court should dismiss the Third Counterclaim.

## VI. MOYE WAS IMPROPERLY JOINED

Infinitive moved pursuant to Fed. R. Civ. P. 15(a) only for leave to Amend its Answer and Affirmative Defenses to include an additional defense and Counterclaims.  *See* D.E. 77 (the "Motion to Amend").  It now argues that the claims asserted against Moye are governed by Rule 13(h).  Rule 13(h) states: "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."  Rule 19 relates to required joinder; Rule 20 relates to permissive joinder.  Neither Rule involves adding a new counterclaim-defendant as a party.  Moye was impermissibly joined.

Infinitive's argument that 11:59 previously argued that Moye was improperly joined, *see* D.E. 113 at 16, is belied by 11:59's submission in response to Infinitive's Motion to amend to include the counterclaims. *See* D.E. 80.

## VII. INFINITIVE HAS NOT MOVED TO AMEND THE COUNTERCLAIMS

"It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).  Infinitive has not moved to amend its Counterclaims, but merely drops a footnote requesting leave to amend the Counterclaim.  *See* D.E. 113 at 9 n.2.  This is inadequate.  The Court should dismiss the Counterclaims without leave to amend.

## CONCLUSION

For the foregoing reasons, as well as the reasons in 11:59's moving papers, 11:59 respectfully requests that the Court grant its Motion to Dismiss Infinitive's Counterclaims, with prejudice, in their entirety.

Respectfully submitted,

**POTTER & MURDOCK**
*Attorneys for Plaintiff M Corp dba 11:59*

By: __/s/ John M. Murdock__
John M. Murdock, Esq.  (VSB#26647)
Brian S. Szmak, Esq.  (VSB#92555)
252 N. Washington Street
Falls Church, VA  22046
jmurdock@pottermurdock.com
bszmak@pottermurdock.com
Telephone:  (703) 992-6950


**NUKK-FREEMAN & CERRA, P.C.**
*Attorneys for Plaintiff M Corp dba 11:59*

By: _____
Kegan S. Andeskie, Esq.
Stacy Landau, Esq.
26 Main Street, Suite 202
Chatham, NJ, 07928
kandeskie@nfclegal.com
slandau@nfclegal.com
Tel.: (973) 665-9100
Fax: (973) 665-9101

Dated: July 16, 2025

## CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of July 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record. I also caused a copy of the foregoing to be served upon the following by electronic mail:

Micah E. Ticatch, Esq.
John W.H. Harding, Esq.
ISLERDARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
mticatch@islerdare.com
jharding@islerdare.com
*Attorneys for Defendant Infinitive, Inc.*

John M. Remy, Esq.
Eric P. Burns, Esq.
Kenneth Bledsoe, Esq.
JACKSON LEWIS, P.C.
10701 Parkridge Blvd., Suite 300
Reston, VA  20191
John.Remy@jacksonlewis.com
Eric.Burns@jacksonlewis.com
Kenneth.Bledsoe@jacksonlewis.com
*Attorneys for Defendant Joseph Bradley Sheridan*

Daniel McCoy, Esq.
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
dmccoy@fenwick.com
*Attorneys for Defendant Databricks Inc.*

Reanne Swafford-Harris, Esq.
FENWICK & WEST LLP
730 Arizona Avenue, 1st Floor
Santa Monica, CA  90401
rswaffordharris@fenwick.com
*Attorneys for Defendant Databricks Inc.*

Robert R. Vieth, Esq.
HIRSCHLER FLEISCHER, PC
1676 International Dr., Suite 1350
Tysons Corner, Virginia 22102
rvieth@hirschlerlaw.com
*Attorneys for Defendant Databricks Inc.*

Respectfully submitted,

**POTTER & MURDOCK**
*Attorneys for Plaintiff M Corp dba 11:59*


By: __/s/ John M. Murdock_____
  John M. Murdock, Esq.